## 70026. MARELLA v. THE STATE.
### (333 SE2d 186)

BEASLEY, Judge.

Appellant Marella appeals his conviction of armed robbery of the night pharmacist of a drug store on March 7, 1983.

Marella was tried on March 12-13, 1984. The victim, from whom drugs were taken at gunpoint, made a positive in-court identification of Marella as the robber. On direct examination she was asked to relate the description of the perpetrator that she gave to police following the robbery, to which she responded: "I said he was tall about six feet, slender, and had on blue jeans and a maroon and white jacket. His shirt he had on I think was white. He had sort of curly hair and his complexion wasn't smooth, he had like markings there, and he had very high cheek bones. He sort of had large oval eyes, some brownish hair and he had a sort of a low part. . . . I said he did probably have a scraggly beard at the time."

Marella contends that the witness' testimony was successfully impeached by his admission into evidence of an incident report signed by D. C. Allen as "Reporting Officer" the date of the robbery, which recorded a description of the robber as: "W/M 5'7" sandy blond curly hair, short and parted on left side. Subject wearing maroon jacket and

white shirt, blue jeans. Subject was unshaven." Allen, the officer who took the initial report and had since left the police force, did not testify. Officer Clark, who entered investigation of the case beginning July 11, testified at the call of the state. He did not obtain a description from the victim but targeted defendant based on information obtained from a person arrested with defendant on an unrelated charge. Shortly after entering the case, officer Clark conducted a photo lineup with the pharmacist in which she had "no difficulty" in identifying defendant's photo. No challenge was made to this procedure, and the photographs were admitted in evidence.

Defendant urges as error the trial court's "acceptance" of the verdict, on the ground that the evidence did not support it because, he maintains, the in-court identification by the victim was conclusively impeached. This, he argues, was brought about by her initial description to the officer the night of the incident which did not fit this defendant, and by the discrepancy between that description and the one she said at trial she had given that night over a year earlier.

Such argument simply does not hold up. Most glaring is that the source of the description on the incident report is unknown. It is a description recorded by an officer who was not at trial for examination as to how he obtained it. The report does not even attribute the description to the victim or to anyone else, for that matter. The report indicates there were two other witnesses, and that these two males saw the robber leave the store with a brown paper Eckerd's bag but saw no vehicle nor the direction in which the robber went. So obviously they, too, observed some of his physical features. The pharmacist denied that the description in the report was the one she gave that night. She did not sign it, and there was no evidence she even saw it prior to its being exhibited to her at trial by defendant's counsel. Thus there was no evidence that it was even her statement. At most, when pressed, she said she possibly could have given such a description that night long since past. Whether the description on the incident report is verbatim what she gave the officer, or a composite of what three people told the officer, or what one of two people other than the victim told him, or the officer's translation into his own words of what the victim or either or both of the other two witnesses or all three told him, is all subject to conjecture. There is no evidence either way.

Third, the descriptions are not antithetical. A comparison of them shows that they are similar in important respects, with some height difference and a difference in the hair color. Whether "brownish" is distinctively different from "sandy blond" is a matter of degree and the judgment of the beholder.

OCGA § 24-9-83 provides that "[a] witness may be impeached by contradictory statements previously made by him as to matters rele-

vant to his testimony and to the case. Before contradictory statements may be proved against him, unless they are written statements made under oath in connection with some judicial proceedings, the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible. If the contradictory statements are in writing and in existence, they shall be shown to him or read in his hearing. To lay this foundation, the witness may be recalled at any time. When thus impeached, the witness may be sustained by proof of general good character, the effect of the evidence to be determined by the jury." OCGA § 24-9-82 provides that "[a] witness may be impeached by disproving the facts testified to by him." See *Middle Ga. & Atl. R. Co. v. Barnett*, 104 Ga. 582 (30 SE 771) (1898). Although appellant cites only the latter provision in this court, it appears from his argument that he advances both methods for impeachment, that is, by a prior inconsistent statement and by disproving the truth of the witness' testimony. As to the first method, his argument is that the first description is contrary to the description given at trial as being the one given originally. As to the second, we take his argument to be that the in-court identification of defendant was impeached by disproving that defendant fit the description given by the witness earlier and which she admitted did not fit him.

In either event, we cannot say as a matter of law 1) that, in comparison, her recollection as to what she told the officer originally was a contradictory statement in its particulars, or 2) that the description in the police report was made by the witness, or 3) that, as appellant proposes in his brief, the facts testified to by the witness were disproved (i.e., that what she said at trial was in fact not what she told the officer), or 4) that the victim's unequivocal in-court identification of the person who robbed her, buttressed as it was by her photo identification some months earlier, was conclusively destroyed.

That being the case, the questions of credibility and impeachment were properly left to the jury, which unlike this court was able to observe defendant as well as this witness at least at trial although of course not on the night of the incident. OCGA § 24-9-85 (a). As the court in *Hayes v. State*, 168 Ga. App. 710 (309 SE2d 843) (1983) explained: " '[I]t is within the power and right of a jury to believe a witness, no matter what effort may have been made to impeach him, or what testimony has been presented for that purpose, and even though the witness be not corroborated.' [Cits.]" This is not a case where the witness' "testimony on a material point [has] been contradicted," as in the case cited by appellant, *Pike v. Greyhound Bus Lines*, 140 Ga. App. 863, 864 (1) (232 SE2d 143) (1977). The pharmacist's identification at trial of defendant as the perpetrator did not dissolve as a matter of law, and thus the jury verdict is supported and

must stand.

Reviewing the evidence in a light most favorable to the verdict, the evidence is sufficient to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Judgment affirmed. *Deen, P. J., and Pope, J., concur.*

DECIDED JULY 8, 1985.

*Jay W. Bouldin*, for appellant.

*Robert E. Keller*, District Attorney, *Albert B. Collier*, Assistant District Attorney, for appellee.