A03A1694. CLEMONS v. THE STATE.
(595 SE2d 530)

BLACKBURN, Presiding Judge.

Following her conviction by a jury of armed robbery, India Marie Clemons appeals, contending that (1) the evidence was insufficient to support the verdict and (2) certain unsworn testimony was improperly admitted. For the reasons set forth below, we affirm.

1. In two enumerations of error, Clemons argues that the evidence was insufficient to support her conviction for armed robbery.

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to support the jury's verdict and determine if a rational trier of fact could find each essential element of the crimes charged beyond a reasonable doubt. We do not weigh the evidence or determine witness credibility. Conflicts in witness testimony are matters of credibility for the jury to resolve. And as long as there

---

[9] Id. at 430 (1).
[10] Id. at 430 (2).
[11] Id.
[12] (Citation omitted.) *Bumgarner v. Green,* 227 Ga. App. 156, 159 (1) (489 SE2d 43) (1997).

is some evidence, even though contradicted, to support each fact necessary for the state's case, the verdict will be upheld.

(Punctuation and footnote omitted.) *Morgan v. State.*[1] See also *Jackson v. Virginia.*[2]

Viewed in that light, the evidence shows that on October 3, 2001, Clemons went with Emil Hall to the apartment of Emil's brother, Aaron Hall. In Clemons's presence, Emil Hall showed his brother a handgun and talked of robbing a store so that Aaron could pay his bills. Aaron agreed to participate. At trial, Aaron testified unequivocally that Clemons participated in the conversation regarding the planning of the robbery, and that she asked during this conversation: "[A]re you going to do [the robbery] or not?" Afterward, all three agreed to commit the robbery.

With all parties knowing that they were going to execute the plan to rob a convenience store, Clemons and the Hall brothers took I-20 west to Douglas County, stopping once for gas and a second time to allow Clemons to make a phone call. At this second stop, Clemons took over as driver. The trio exited on Post Road and drove to a convenience store. Clemons parked the car so that it was facing the road and could not be seen from the store. As Clemons sat with the engine running, Emil and Aaron Hall entered the store. Emil Hall pulled out the handgun, and the two robbed the store owner of the contents of both the cash register and a bank bag; Aaron Hall also took the wallet of a third person. The brothers then ran from the store and jumped into the waiting car, the doors of which were kept open and waiting by Clemons. With the Hall brothers in the car, Clemons sped away.

One of the victims called the police, giving a description of the car and stating that it had a temporary cardboard drive-out tag. Within minutes of the robbery, Clemons and the Halls were apprehended on I-20. The handgun used in the robbery was found in Clemons's purse, and the money taken in the robbery was found stuffed behind an armrest in the back seat. This evidence was sufficient to allow a rational trier of fact to find Clemons guilty beyond a reasonable doubt of armed robbery.

Clemons contends that the only evidence connecting her to the armed robbery was the uncorroborated testimony of her alleged accomplice, Aaron Hall. Under OCGA § 24-4-8,

> testimony of an accomplice must be corroborated by either another witness or by corroborating circumstances. The cor-

---

[1] *Morgan v. State*, 255 Ga. App. 58 (1) (564 SE2d 467) (2002).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

roboration, however, need not be sufficient to warrant a guilty verdict or prove every material element of the crime; it need only tend to connect and identify the defendant with the crime charged. . . . Circumstantial evidence, when taken with the accomplice testimony, showing guilt beyond a reasonable doubt, is sufficient corroboration. The jury may consider the conduct of the defendant before, during and after the commission of the crime to determine the defendant's intent and [her] participation in the crime to determine whether [her] conduct is sufficient corroboration of the accomplice's testimony to sustain the conviction.

(Citations omitted.) *Whitfield v. State.*[3]

Clemons initially gave a statement to the police in which she said that she had gone to Douglas County with the Hall brothers and had agreed to drive because Aaron did not have a valid driver's license. She stated that she stopped the car at the convenience store so that the Halls could make purchases, and that after they came running out of the store and shouted for her to go, she drove away, being forced to do so by Emil Hall. In this statement, however, Clemons affirmatively lied that, although she knew Aaron Hall, she had never met Emil Hall before.

This evidence, together with the facts that she was driving the getaway car at the time it was stopped by the police and that she was in possession of the handgun and the money stolen from the convenience store, sufficiently supports Aaron Hall's testimony and Clemons's conviction. *Hefner v. State.*[4] Moreover, "[t]he sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine." *Bush v. State.*[5]

2. In her third and fourth enumerations of error, Clemons objects to the trial court's allowing the State to advise the jury why one of its witnesses would not be testifying. The record shows that the State had planned to have both Emil Hall and Aaron Hall, who had pled guilty and were under sentence for the armed robbery, testify at Clemons's trial, and had told the jurors during opening statement that both would testify. Aaron Hall testified as the State understood that he would. Before he was to take the stand, however, Emil Hall informed the State that he would not testify at all.

When court reconvened the next morning, the State informed the court that Emil Hall was now declining to testify and indicated

[3] *Whitfield v. State*, 159 Ga. App. 398, 400-401 (6) (283 SE2d 627) (1981).
[4] *Hefner v. State*, 224 Ga. App. 612, 613 (1) (481 SE2d 599) (1997).
[5] *Bush v. State*, 267 Ga. 877, 879 (485 SE2d 466) (1997).

its intention to inform the jury that Hall now refused to testify. Clemons objected to such an announcement and sought a bench conference. Clemons argued that any explanation in the presence of the jury of the witness's absence would be improper. The trial court ruled that the State was entitled to explain why it was not calling a witness, expressing its concern that a question might be raised later as to why Hall had not been called.

Clemons contends in her third enumeration of error that the State, in making its statement to the jury concerning Emil Hall's refusal to testify, improperly commented on the defendant's failure to testify and benefitted from any inferences the jury drew from the assertion of the Fifth Amendment privilege to remain silent. We find no merit in this argument.

"As a rule of both constitutional law and Georgia statutory law, a prosecutor may not make any comment upon a criminal defendant's failure to testify at trial. This rule ensures that the State does not impose 'a penalty' for or make 'costly' the exercise of the constitutional right to remain silent." (Citations omitted.) *Raheem v. State.*[6] However, contrary to Clemons's contention, the Fifth Amendment is not implicated in this case. Hall was not the criminal defendant in this case and he was not invoking his Fifth Amendment right to remain silent to avoid self-incrimination. He was refusing to testify against Clemons in a trial in which she, not he, was the criminal defendant.

In her fourth enumeration of error, Clemons argues that the prosecuting attorney's statement regarding Hall's refusal to testify also runs afoul of OCGA § 17-8-75. This argument is without merit. OCGA § 17-8-75 provides:

Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

The plain language of OCGA § 17-8-75 makes clear that it, too, is not implicated in this case. As our Supreme Court has pointed out, the statute "requires a judge to prevent counsel from making improper arguments," *Earnest v. State,*[7] and cases dealing with

---

[6] *Raheem v. State,* 275 Ga. 87, 92 (7) (560 SE2d 680) (2002).
[7] *Earnest v. State,* 262 Ga. 494, 495 (1) (422 SE2d 188) (1992).

OCGA § 17-8-75 most often involve prejudicial statements made by one of the parties without the consent of the court during either opening or closing argument. See, e.g., *Fincher v. State*[8] (holding that trial court's failure to take curative action following prosecutor's misstatement of evidence during closing argument was harmless error); *Brown v. State*[9] ("[f]urthermore, since OCGA § 17-8-75 precludes counsel from making statements to the jury based upon facts which are not in evidence, the court's rulings preventing Brown from testifying to facts not in evidence during his closing argument was correct"); *Cheney v. State*[10] (holding that prosecutor's reference during opening argument to defendant's invocation of right to remain silent did not require mistrial). "What the law forbids is the introduction into a case by way of argument of facts which are not in the record and are calculated to prejudice a party and render the trial unfair." (Punctuation omitted.) *Perry v. State*.[11] The statute imposes a duty on the trial court to interpose and prevent such prejudicial statements and, on objection made, rebuke counsel, give curative instructions, or, in its discretion, order a mistrial. In this case, however, the prosecuting attorney informed the trial court, outside the hearing of the jury and before making a statement to the jury, that his witness had changed his mind about testifying and that he wanted to let the jury know why the witness would not be testifying. Clemons objected to the statement before it was made to the jury. The trial court overruled Clemons's objection and consented to the prosecuting attorney's statement, expressing its own concern that a question might be raised later as to why Hall had not testified. The prosecuting attorney made the statement as a statement of fact, without any attempt to argue the evidence or prejudice the case. We have found no case in which OCGA § 17-8-75 has been applied in a situation such as this, where a party has informed the court of the content of a statement it intends to make and received the consent of the court to make such a statement. Of course, this is to be expected since it makes no sense for a trial court to interpose and prevent, much less rebuke counsel for making a statement the court has only just approved.

There is nothing in the record to indicate that the prosecuting attorney acted with an improper motive, bad faith, or intent to subvert Clemons's constitutional rights. The State had secured Hall's agreement to testify and had relied in good faith on that agreement in making its opening statement to the jury. It was surprised by Hall's unexpected refusal to testify. In making its statement, the

[8] *Fincher v. State*, 276 Ga. 480 (578 SE2d 102) (2003).
[9] *Brown v. State*, 246 Ga. App. 517, 522-523 (9) (541 SE2d 112) (2000).
[10] *Cheney v. State*, 233 Ga. App. 66 (503 SE2d 327) (1998).
[11] *Perry v. State*, 232 Ga. App. 484, 487 (2) (c) (500 SE2d 923) (1998).

prosecutor spoke the simple truth, and we do not find that truthful statement to be harmful under the facts of this case.

The direct and circumstantial evidence of Clemons's participation in the armed robbery was more than sufficient to support her conviction, and it is highly probable that the trial court's decision to allow the State to make the statement explaining Hall's absence did not contribute to the judgment. *Jones v. State.*[12]

3. The dissent would reverse Clemons's conviction, finding that any error created by the prosecutor's comments was not harmless. It reaches this conclusion, however, by considering and commenting on the credibility of Aaron Hall, a matter specifically reserved for the jury.

This Court is "not at liberty to change [its] role from disinterested decision-maker to appellate advocate reviewing a trial record for error." (Punctuation omitted.) *Outdoor Systems v. Cherokee County.*[13]

It is equally fundamental that this Court has no power to consider or address the credibility of any of the parties or their witnesses.

> It is well settled that in an entirely circumstantial case, the question whether there is a reasonable hypothesis favorable to the accused is the jury's province. Questions as to reasonableness are generally to be decided by the jury which heard the evidence, and finds beyond a reasonable doubt that there is no reasonable hypothesis other than guilt. The appellate court will not disturb that finding, unless the verdict of guilty is insupportable as a matter of law. The appellate courts have no yardstick by which to ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of 12 jurors of rational mind. Moreover, *in every case the jury is the arbiter of credibility including as to the defendant's explanation, and the jury is the body which resolves conflicting evidence, and where the jury has done so, the appellate court cannot merely substitute its judgment for that of the jury.*

(Citations and punctuation omitted; emphasis supplied.) *Johnson v. State.*[14]

The reason behind this limitation on our review is based on a

---

[12] *Jones v. State*, 159 Ga. App. 704, 705 (285 SE2d 45) (1981).
[13] *Outdoor Systems v. Cherokee County*, 243 Ga. App. 406, 409 (2) (533 SE2d 446) (2000).
[14] *Johnson v. State*, 208 Ga. App. 747, 748-749 (1) (431 SE2d 737) (1993).

practical and fundamental premise applicable to all manners of appellate review. Only the trier of fact has the opportunity to directly observe witnesses as they provide testimony from the stand. This Court has no such opportunity, and, as a result, it is an inviolate rule of appellate jurisprudence that this Court refrains from any judgment of credibility, whether determining sufficiency of the evidence, the overwhelming nature of the evidence, or any other matter involving judgments made by the trier of fact which are dependent on witness observation. See, e.g., *Marella v. State*.[15]

In its determination that any error in this case was not harmless, the dissent discounts Aaron Hall's testimony on the basis of his credibility, stating as its sole support:

> [Aaron Hall] testified that Clemons was in the room while he and his brother planned the crime and that she drove his car to and from the convenience store. *Aaron Hall admitted during cross-examination, however, that he had pled guilty to two counts of armed robbery and had received a more favorable sentence in exchange for agreeing to testify against Clemons.*

(Emphasis supplied.) The effect that Aaron Hall's prior agreement may have had on his credibility was solely for the jury to decide, not this Court. *Marella*, supra. Quite to the contrary, our standard of review absolutely requires us to view the evidence in the light most favorable to the verdict. *Morgan*, supra.

In this case, Aaron Hall explicitly testified that Clemons knew about the robbery in which she voluntarily participated. He did not equivocate. This Court has no authority to attempt to discredit this unequivocal testimony by arguing that Aaron Hall was not credible because he had entered a plea bargain with the State. That is a consideration for the trier of fact exclusively, just as the trial court in this case instructed the panel of jurors who issued this decision. And the authority cited by the dissent simply reinforces the rule that the effect of Hall's plea bargain was an issue for the jury. See *State v. Vogleson*[16] ("[t]he testimony of a witness who has made a deal with the State regarding his understanding of the disparity between the sentence he is getting for his cooperation and the sentence he would have gotten without that cooperation is objective evidence from which a *jury* can determine whether the witness is biased to a degree that affects credibility") (emphasis supplied); *Byrd v. Owen*[17] (State

---

[15] *Marella v. State*, 175 Ga. App. 323, 325 (333 SE2d 186) (1985).
[16] *State v. Vogleson*, 275 Ga. 637, 639 (1) (571 SE2d 752) (2002).
[17] *Byrd v. Owen*, 272 Ga. 807, 811 (1) (536 SE2d 736) (2000).

improperly suppressed evidence of main witness's immunity agreement during trial). We have no right or power to usurp the authority of the trier of fact.

We recognize that Clemons's concern is that the State should not be able to explain why its witnesses are not able to testify and then benefit from an inference on the part of the jury that the State had the evidence it said it did but could not present it because the witness's lawyer would not allow him to testify. Clemons's concern is a legitimate one, and it is for this reason that a party is not permitted to explain the failure of an absent witness to testify. While we have held in this case that any error was harmless, it is far better to prevent such situations from arising, than it is to cure them.

We note that the State could minimize the likelihood of a co-defendant witness refusing to testify, by better planning of the taking of a plea and the imposition of sentence; by taking a statement on the record at the time of the entry of the plea, whereby such testimony could be used in the event the witness then refuses to testify. We further question by what authority the witness would refuse to testify, where he has already pled guilty and been sentenced. The State was not required to announce to the jury what the testimony of each witness would be. Here, a generic reference to what the evidence would show would have eliminated its dilemma, as the testifying witness would have satisfied the State's promise of a showing. The better practice is to minimize the specificity of one's promises rather than rely on the "harmless error" doctrine.

In addition, we must note that, in this case, the prosecutor's comments on Emil Hall's failure to testify may have infringed Clemons's Sixth Amendment right to confront the witnesses against her. Clemons, however, did not contend, either at trial or on appeal, that her right to confront the witnesses against her was violated, and, as a result, she waived this argument on appeal and it cannot form the basis for our decision here. See, e.g., *Heidler v. State*[18] (holding that defendant waived the right to raise his claim that the Confrontation Clause was violated because he did not object on that ground at trial); *Dyer v. State*[19] (holding that defendant's contention that questioning denied him his rights under the Sixth Amendment was not "preserved for review, as neither [defendant's] objection to the question nor his subsequent motion for a mistrial raised this constitutional point"). See also Court of Appeals Rule 27.

---

[18] *Heidler v. State*, 273 Ga. 54, 60 (7) (537 SE2d 44) (2000).
[19] *Dyer v. State*, 257 Ga. App. 267, 268 (2) (570 SE2d 692) (2002).

Nonetheless, we urge the State to remember that the right of confrontation is essential in every case for three main reasons:

> (1) it insures that the witness will give his statements under oath — thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) it forces the witness to submit to cross-examination[,] the greatest legal engine ever invented for the discovery of truth; and (3) it permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

(Punctuation omitted.) *Harrell v. State.*[20]

Here, the statements by the prosecutor during opening argument regarding the content of Emil Hall's future testimony could not be challenged by Clemons. Emil Hall never took the stand so that he could be cross-examined by Clemons, and the jury never had the opportunity to judge his credibility. As stated previously, these problems could have been easily avoided by the State here, and, had Clemons preserved these arguments, this case may have been decided differently.

*Judgment affirmed. Smith, C. J., Andrews, P. J., Ruffin, P. J., Miller and Ellington, JJ., concur. Phipps, J., concurs in part and dissents in part.*

PHIPPS, Judge, concurring in part and dissenting in part.

I concur fully in Division 1 of the majority opinion, but I respectfully dissent from Division 2. I agree with the majority that "a party is not permitted to explain the failure of an absent witness to testify." I do not agree, however, that the prosecutor's statement to the jury explaining Emil Hall's failure to testify was harmless error.

A nonconstitutional error in a criminal case is harmless only if it is highly probable that the error did not contribute to the judgment.[21] "Under that test, a reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict of the jury would have been different in the absence of this error."[22]

The evidence of Clemons's guilt was far from overwhelming. The only evidence that she participated in the robbery — as opposed to merely being present when it occurred — was the testimony of her

---

[20] *Harrell v. State*, 241 Ga. 181, 183 (1) (243 SE2d 890) (1978).
[21] *Felder v. State*, 266 Ga. 574, 576 (2) (468 SE2d 769) (1996).
[22] (Citation and punctuation omitted.) Id.

alleged accomplice, Aaron Hall. He testified that Clemons was in the room while he and his brother planned the crime and that she drove his car to and from the convenience store. Aaron Hall admitted during cross-examination, however, that he had pled guilty to two counts of armed robbery and had received a more favorable sentence in exchange for agreeing to testify against Clemons. The jurors obviously felt that the case was close, as they found Clemons guilty of robbing one person inside the store, but not guilty of robbing the other.

During his opening statement, the prosecutor told the jury not only that Emil Hall would take the stand, but that he would testify that Clemons had given him the gun used in the robbery. Evidence that Clemons had procured the gun would have tied her more closely to the robberies. But Emil Hall did not testify, and the evidence linking Clemons to the gun was tenuous. Aaron Hall testified that when he returned to his apartment on the morning of the robbery after having taken some friends home, "they" — meaning Clemons and his brother — had the gun, but he later explained that he never saw Clemons holding the gun, that she made no statements indicating that she owned it, and that he (Aaron Hall) stashed it in her purse after the robbery because his brother told him to do so.

When the prosecutor told the jury that Emil Hall had declined to testify after consulting with counsel, the jury was permitted to infer that if Emil Hall had taken the stand, he would have testified as the prosecutor had promised — that Clemons provided the gun. In effect, the state was able to establish a critical fact in its case without having a witness testify to that fact. The prosecutor obviously recognized that Emil Hall's testimony was critical. A number of other witnesses who appeared on the state's witness list ultimately did not testify at trial — yet the only witness whose absence the prosecutor sought to explain was Emil Hall.

Because the evidence of Clemons's guilt was not overwhelming, the inference that she supplied the gun could have tipped the balance in the minds of the jurors. Thus, I cannot say that it is highly probable that the error did not affect the judgment.[23] Clemons's conviction should be reversed.

The majority complains that in finding harmful error, I have improperly considered Aaron Hall's credibility. While the factfinder alone decides whether to believe any witness, it is widely recognized that evidence that an accomplice has agreed to testify for the state in

---

[23] See *Johnson v. State*, 238 Ga. 59, 60 (230 SE2d 869) (1976) (finding harmful error where prosecutor told jury that state had not called witness because "she was too terrified to come in and testify against the defendant").

exchange for leniency may tend to discredit his testimony.[24] Deciding whether the evidence against Clemons was overwhelming — which is the heart of the harmless error inquiry — demands analysis of the weight of the state's evidence. Evidence that the principal prosecution witness potentially harbored a bias must be part of that analysis. As discussed above, however, Aaron Hall's potential bias is not the only basis for my conclusion that the error here was harmful. Even if there had been no evidence that Aaron Hall had made a deal with the state, the case against Clemons, though legally sufficient, was not overwhelming.

DECIDED FEBRUARY 5, 2004 —
RECONSIDERATION DENIED FEBRUARY 25, 2004 ▉

*Axam, Adams & Secret, Tony L. Axam*, for appellant.
*David McDade, District Attorney, Christopher R. Johnson, Assistant District Attorney*, for appellee.

---

[24] See, e.g., *State v. Vogleson*, 275 Ga. 637, 639 (1) (571 SE2d 752) (2002); *Byrd v. Owen*, 272 Ga. 807, 811 (1) (536 SE2d 736) (2000); see also Suggested Pattern Jury Instructions, Vol. II, Section 1.31.80, p. 17 (3rd ed. 2003).