A98A1050. CHENEY v. THE STATE.
(503 SE2d 327)

McMURRAY, Presiding Judge.

Defendant was charged in an indictment with aggravated assault, by use of a deadly weapon, and also with possession of a firearm during the commission of a felony. The evidence at his jury trial revealed the following: Shortly after 7:00 a.m. on Sunday, July 7, 1996, Officer Tony Hajjar of the Locust Grove Police Department responded to a call of a "person shot." As Officer Hajjar arrived, "Defendant . . . was in the doorway [of Rusty Blaydes' mobile home] calling to [the officer] by name because [defendant knows him]. And [Officer Hajjar] immediately . . . observed the victim lying on the porch on his back and he was bleeding." Officer Hajjar tried "to keep him [the victim] conscious by talking to him and not letting him go into a coma . . . until the EMS could arrive. There was a bottle of vodka . . . on the porch, near the victim, and [also] a spent round of, it appeared to be a .38 caliber round . . . on the porch beside the victim." After the emergency medical technicians arrived, Officer Hajjar "immediately went to the Defendant's [nearby] residence, where Officer Gunter from the Henry County Police Department had him in custody in the front yard. [Officer Hajjar] took custody, . . . handcuffed [defendant], and placed him under arrest and . . . . read him his Miranda." After these warnings, defendant "said, 'I shot him.'" The weapon was recovered from defendant's residence, "on an ironing board . . . between the kitchen and living room." The weapon contained "[f]ive spent cartridges. . . ." Sergeant Keith Nichols with the Henry County Bureau of Police Services identified a half-gallon

bottle of vodka and two empty shot glasses recovered from Rusty Blaydes' mobile home.

Scott Ted Strickland, the victim, testified he was at the mobile home of his friend, Rusty Blaydes, "helping him sheetrock and renovate it." They "stay[ed] up all night working on it[.] . . . [Around five or six in the morning, the victim] was asleep on the floor [when he] was awakened by the Defendant. He kicked [the victim], nudged [him] with his foot and told [the victim] to get up." After complimenting the renovation work, defendant "left and he came back a while later." He "had a bottle of vodka in his hand[, and said,] 'This is a welcome to the neighborhood bottle.'" After the victim consumed his second shot glass of vodka, the defendant "all of a sudden just changed. . . . His whole demeanor changed. He just started getting cocky and then just comes up and says, 'I'm going to kick your a— .'" The victim "thought he was joking, at first. And then [the victim] looked at him and . . . realized, 'Hey, he's not joking.' [The victim] said, 'Well, I'm going to stomp your a— , you MF. . . .' [But defendant] pulled out [a] pistol and [the victim] jumped back. [The victim] said, 'Hey, everything's cool,' . . . and as soon as [the victim] jumped back and threw [his] hands up, [defendant] shot [the victim] in the chest." The victim "hollered, 'Run,' and . . . threw [his] hands up over [his] face and . . . arms up over [his] chest . . ., and [he] was struck in the elbow." The victim turned and fled towards the door, and "was struck twice [more] in the back. [The victim] fell face first out on the front porch[, and] couldn't move." The victim was "pretty much paralyzed from [the] chest down. [He] couldn't move and [he] heard [defendant] walk up beside [him] and [the victim] looked up. . . . [Defendant] pulled the hammer back, had the gun pointed . . . at [the victim's] head. . . . [The victim] turned [his] head down, and when [he] did, [defendant] dropped [the gun] down and shot [the victim] in the back. . . ."

Rusty Duke Blaydes confirmed that defendant was "standing in front of the window, drinking . . . out of the bottle, and just all of a sudden he goes [to the victim], . . . 'I want to kick your a— , MF.'" Rusty Blaydes "turned around and Scott [the victim] said, 'Do what, MF?' And [Rusty Blaydes did not] really remember seeing where the gun come [sic] from, but [defendant] pulled a gun. It was, like, bam, bam, and . . . [the victim] put his hands up in front of his head. . . . [Rusty Blaydes ran] out the door and . . . jumped off the porch." Rusty Blaydes further confirmed that, "with no provocation of any nature whatsoever, [defendant] pulled out a pistol and shot [the victim] five times."

Defendant testified he acted in self-defense, only after Rusty Blaydes kicked him in the groin, shooting "without aiming or looking where [he] was shooting, [and that] in panic [he] pulled the gun and

emptied it, all five rounds. . . ." Nevertheless, the jury found defendant guilty as charged. This direct appeal followed. *Held*:

1. Defendant first enumerates the denial of his motion for mistrial predicated upon the State's reference to defendant's initial exercise of his right to remain silent.

In the State's opening statement, the State's Attorney told the jury that, when defendant was asked if he would speak to police without a lawyer, "he told them, 'No, I don't think I will,' " to give some context to defendant's subsequently volunteered custodial statement, "I shot him." Defendant's motion for mistrial was denied but the trial court ordered the State's Attorney to "stay off of that." After trial, defendant renewed his motion for mistrial, asking first that the jury be admonished "to totally disregard whatever that comment was. . . ." The trial court noted it excluded evidence of that statement and had already charged the jury that "anything said in the opening statements and closing arguments was not evidence, and that if anything were said in those that were not borne out by the evidence they should disregard it." Thereafter, defendant declined the trial court's offer to "specifically charge them to ignore that particular statement."

(a) The decision whether to grant a mistrial under OCGA § 17-8-75 is committed to the sound discretion of the trial court and its ruling will not be disturbed on appeal except upon an abuse of that discretion such that a new trial is necessary to protect the defendant's right to a fair trial. *Cowards v. State*, 266 Ga. 191, 193 (3), 194 (3) (c) (465 SE2d 677); *Floyd v. State*, 227 Ga. App. 873 (1) (490 SE2d 542). "Evidence as to silence on the part of the defendant at the time of his arrest should be excluded when objected to, for he is then entitled to remain silent, and the prosecution may not use against him the fact that he stood mute or claimed his privilege. Improper reference to a defendant's silence, however, does not automatically require reversal." (Citations and punctuation omitted.) *Brewer v. State*, 219 Ga. App. 16, 18 (4), 19 (463 SE2d 906).

"In the case of *Dowda v. State*, 74 Ga. 12, the Supreme Court commended the practice of an opening statement by the solicitor-general [now district attorney] of what he expected to prove in behalf of the State, on the ground that it gave the accused information of the facts that he was expected to meet. This commendation, however, could properly apply only to a statement of facts which the [district attorney] really expected to prove, and which, under the rules of evidence, he would be allowed to prove. It certainly could not apply to allegations which could not be supported by evidence, or which, even though true, could not, under the rules of law, be admitted as evidence against the defendant. In our opinion [of the case sub judice,] the [opening] statement by the [State's Attorney referring to defend-

ant's initial invocation of his right to silence] was improper and should not have been permitted by the [trial] court." *Gossett v. State*, 6 Ga. App. 439, 440 (65 SE 162).

"[W]here unwarranted and prejudicial remarks are made which do not refer to any matter [admissible] in evidence in the case, and a motion for mistrial is based on such remarks, the court has the duty of eradicating the effect of the remarks from the jury's mind by ruling them out, reprimanding counsel, and instructing the jury to disregard them, and ordinarily this cures the error." *Emerson v. State*, 90 Ga. App. 323, 324 (82 SE2d 882). In the case sub judice, the trial court immediately admonished the State's Attorney to stay away from defendant's initial silence, and ultimately excluded evidence of the same. The trial court also instructed the jury that the remarks of counsel are not evidence and that it should disregard those portions of the opening statement not supported by evidence. In our view, this was sufficient to cure the error in permitting the State's Attorney to make reference to defendant's silence upon arrest, during opening statement. Consequently, we find no manifest abuse of discretion in overruling defendant's motion for mistrial.

(b) Additional arguments directed to the inadmissibility of defendant's volunteered custodial statement, "I shot him," due to the absence of additional *Miranda* warnings are beyond the scope of the enumeration complaining of the denial of the mistrial. Moreover, *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) expressly held: "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the Supreme Court's] holding [in that case]." 16 LE2d at 726.

2. Defendant's two remaining enumerations of error urge the general grounds. Defendant contends the evidence is insufficient because he adduced character evidence and because his testimony shows he was justified in using lethal force, "in order to repel the felonious unprovoked attack . . . initiated against him."

On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the jury's verdict, and defendant no longer enjoys the presumption of innocence. An appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence to convict is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). *Hawkins v. State*, 230 Ga. App. 627, 629 (3) (497 SE2d 386). Conflicts in the testimony of the witnesses, including the State's witnesses, is a matter of credibility for the jury to resolve. So long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. *Searcy v. State*, 236 Ga. 789, 790 (225 SE2d 311); *Grier v. State*, 218 Ga. App. 637, 638 (1) (463 SE2d 130).

"A person commits the offense of aggravated assault when he assaults with a deadly weapon, which, when used offensively, is likely to or actually does cause serious bodily injury. OCGA § 16-5-21 (a) (2). The act of intentionally firing a gun at another, in the absence of justification, is sufficient to support a conviction for aggravated assault under this statute. *Steele v. State*, 196 Ga. App. 330, 331 (2) (396 SE2d 4)." *Belins v. State*, 210 Ga. App. 259 (1) (435 SE2d 675). In the case sub judice, both the victim and his friend Rusty Blaydes testified that defendant's assault with a deadly weapon was unprovoked. This was sufficient to authorize the jury's verdict that defendant is guilty, beyond a reasonable doubt, of aggravated assault as alleged in Count 1 of the indictment. This same evidence authorized the jury's verdict that defendant is guilty, beyond a reasonable doubt, of possession of a firearm during the commission of a felony in violation of OCGA § 16-11-106 (b) (1) as alleged in Count 2. *Adside v. State*, 216 Ga. App. 129 (1) (453 SE2d 139). The general grounds are without merit.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED JUNE 23, 1998 — ▆▆▆▆▆▆▆▆▆

*Lee Sexton & Associates, Lee Sexton,* for appellant.
*Tommy K. Floyd, District Attorney, Thomas R. McBerry, Sandra A. Graves, Assistant District Attorneys,* for appellee.

