## S06A1560. BANKS v. THE STATE.
(642 SE2d 679)

HINES, Justice.

Genous D. Banks appeals his convictions for malice murder and theft by taking a motor vehicle, in connection with the death of Johnny Jerome North. For the reasons that follow, we affirm.[1]

1. Banks asserts that the evidence was insufficient to support his convictions, contending that the State presented only circumstantial

---

[1] North was killed on March 21, 2001. On November 27, 2001, a Fulton County grand jury indicted Banks for malice murder, felony murder while in the commission of aggravated assault, aggravated assault, and theft by taking a motor vehicle. Banks was tried before a jury March 2-5, 2004, and found guilty of all charges. On March 5, 2004, he was sentenced to life in prison for malice murder, a consecutive term of ten years in prison for theft by taking a motor vehicle; the charge of felony murder was vacated by operation of law and the aggravated assault charge was merged with the malice murder count. See *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). Banks moved for a new trial on March 9, 2004, and amended the motion on June 17, 2005. The amended motion was denied on August 11, 2005. Banks filed his notice of appeal on August 29, 2005, and amended the notice of appeal on April 3, 2006; the appeal was docketed in this Court on May 19, 2006, and submitted for decision on the briefs.

evidence that did not exclude all reasonable hypotheses except that of his guilt. See OCGA § 24-4-6.

> [Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. [Cit.]

*Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998).

Construed to support the verdicts, the evidence showed that Banks and North shared an apartment; North was adopting an infant who also lived there. However, North intended to move out of the apartment. At 5:27 p.m. on March 21, 2001, North was on the telephone with his friend, Craddock, and North said, "Genous is fixing to start some shit, I'll call you back." North did not call Craddock back, and, beginning at 6:15 p.m., Craddock telephoned North's apartment several times prior to 7:00 p.m.; the line was always busy.

At approximately 6:15 p.m. that day, neighbors of Banks and North heard sounds from the apartment that sounded like a "commotion," "a lot of banging," "something . . . real heavy falling to the floor or being thrown to the floor, punches or whatever, hitting the wall inside the apartment," and "thumping on the floor." This lasted approximately 30 minutes; there were no such sounds after 7:00 p.m. The apartment manager was notified by the neighbor below the apartment that sounds of a fight were coming from it. At the manager's request, a resident knocked on the apartment door for about five minutes, but no one responded. North's car was parked outside, but the manager commented to a resident that North must not be present because he would not allow loud music to be played in the apartment.

The next morning, Banks drove North's car to the home of North's mother, arriving at 7:45 a.m. Banks asked her to return with him to the apartment, telling her that she needed "to come and see about" North. She asked why, and Banks said North was lying on the bed with blood on his head. She asked why he had not called 911, and he said, "I thought I would come and get you." She went to the apartment and found North dead. North's body was lying face down across a bed with blood on his head and an extension cord tied with an unusual knot around his legs; the same kind of knot was used to tie together skis that Banks indicated were his. A bloody 25-pound barbell weight was below North's head, and another 25-pound barbell

weight was on top of it. North died of blunt force trauma to the head delivered by several blows. There were no signs of forced entry into the apartment, and the telephone cord had been removed from its jack.

North's mother removed the infant from the apartment, and noticed the smell of beer on the infant's breath. There was beer in the baby bottle that she removed from the apartment; North and Banks had previously argued about Banks giving the infant beer.

Banks told investigating officers that he left the apartment in North's car[2] at 7:15 or 7:30 p.m. on March 21, 2001, and that he had not had any type of argument or fight with North that evening. Banks also said North had been speaking on the telephone about five minutes before Banks left, and that when he returned in the morning, the apartment was locked. Investigators determined that there were three keys to the apartment, possessed by North, Banks, and North's mother; all three were accounted for.

Banks presented an alibi witness who testified that Banks had driven to her home at approximately 8:30 p.m. on March 21, 2001; he usually made such visits using public transportation. Banks also presented an alibi witness who testified that he paid her $20 for sex on March 22, 2001, and that he was in her apartment between 7:05 a.m. and 7:35 a.m. that day.

Banks contends that the evidence shows that the murder could have been committed by someone else. However, the evidence was sufficient to enable a rational trier of fact to reject the hypothesis Banks advanced in his effort to refute the charges, and to find him guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Robles v. State*, 277 Ga. 415, 417-418 (1) (589 SE2d 566) (2003).

2. Banks objected to the State's introduction into evidence of four pre-incision autopsy photographs of the victim as repetitive, and to eight post-incision photographs as both repetitive and inflammatory. "Pre-incision photos such as the ones currently at issue which depict the location and nature of the victim's wounds are admissible because they are relevant and material." *Rucker v. State*, 270 Ga. 431, 433 (4) (510 SE2d 816) (1999).

Post-incision autopsy photographs "are admissible if necessary to show some material fact that becomes apparent only due to the autopsy." *Peterson v. State*, 274 Ga. 165, 171 (5) (549 SE2d 387) (2001). These post-incision autopsy photographs showed injuries

---

[2] A friend of North's had previously helped North search for cars he owned after Banks had taken them, and testified that North did not willingly lend his cars to other persons.

under the scalp and to the brain. Without the incisions, North's injuries would not have been visible. See *Holland v. State*, 267 Ga. 833, 836 (2) (483 SE2d 584) (1997); *Thornton v. State*, 264 Ga. 563, 571 (449 SE2d 98) (1994). The internal injuries could not have been shown by photographs of the outside of the body, and the forensic pathologist testified how the different photographs depicted injuries that had not been seen in previously admitted photographs, and each photograph was relevant to some point of the forensic pathologist's testimony. See *Miller v. State*, 277 Ga. 707, 710 (2) (593 SE2d 659) (2004).

3. On direct examination, in response to the State's question, "how long did you know Genous Banks," a witness said: "I didn't know him that well. I met him about a year or two ago when he first got out of prison." Banks moved for a mistrial, and the jury retired to the jury room. After discussion, the trial court said it would deny the mistrial, "conditioned upon whether the jurors believes [sic] they can set that matter aside." The court questioned each juror individually regarding the witness's testimony, and asked whether the jurors could disregard the testimony and not allow it to factor into their decisions regarding the charges Banks faced. One juror's responses caused the court to excuse her and seat the alternate juror. The court then instructed the entire jury that there was no evidence supporting the testimony, and that there would be none, and that the jury was not to allow the testimony to factor in its deliberations in any way, which were to be confined to the charges in this case; the court then inquired if any juror would not be able to follow these instructions. Banks complains that the responses of juror Collins showed that he, too, was unable to properly serve and that consequently a mistrial should have been granted.[3]

When the court asked if Collins would be able to set the testimony aside, he told the court that he had some concern about doing that and "I guess there's is [sic] some question of what it relates to just given the nature of the case to be set aside completely." The court informed Collins that the "other matter is totally irrelevant," that the witness was apparently "a lay person," that there was no confirmation in the case "for what he may have said," and "there probably never would be in this case." The court then asked: "The question is can you set that aside completely?" Collins responded: "Yeah. I mean, if that's the facts then, yes."

---

[3] Banks did not specifically object to the court's handling of juror Collins, and did not ask Collins questions when given the opportunity; he merely renewed his motion for a mistrial after the court's instruction to the entire jury.

> When prejudicial matter is improperly presented to the jury, a mistrial is appropriate if it is essential to preserve the defendant's right to a fair trial. [Cit.] It is for the trial court to determine whether the granting of a mistrial is the only corrective measure or whether any prejudice can be corrected by withdrawing the testimony from the jury's consideration under proper instruction from the court. [Cit.]

*Brown v. State*, 278 Ga. 544, 548 (7) (604 SE2d 503) (2004).

The trial court's questioning and curative instructions adequately preserved Banks's right to a fair trial, and the trial court did not abuse its discretion in denying a mistrial. *Woods v. State*, 233 Ga. 495 (212 SE2d 322) (1975). Further, "a nonresponsive answer that impacts negatively on a defendant's character does not improperly place the defendant's character in issue." (Citations and punctuation omitted.) *Hinely v. State*, 275 Ga. 777, 782 (2) (d) (573 SE2d 66) (2002).

4. During closing argument, the State said that the evidence presented showed motive and "[t]hreats to kill because [Banks] was sent to jail for stealing a truck and the victim turned him in." Banks objected that there was no evidence that he was arrested and sent to jail for stealing a truck, and moved for a mistrial. The court instructed the jury that "you will remember the evidence," and be the judge of the facts in the case, and that argument was not evidence. Banks did not renew his motion for a mistrial after this instruction, and there is no reversible error. *Palmer v. State*, 271 Ga. 234, 241 (12) (517 SE2d 502) (1999). See also *Pearson v. State*, 277 Ga. 813, 815-816 (4) (596 SE2d 582) (2004). Further, a friend of North's testified that North and Banks had argued about a truck, during which North said "he was going to call the police and tell them where the truck was," and Banks said, "well, I'm going to get you." Counsel is permitted wide latitude in closing argument, and limitation on that argument is in the court's discretion. *Hudson v. State*, 273 Ga. 124, 127 (5) (538 SE2d 751) (2000).

5. During closing argument, in discussing the defense theory, the prosecutor said:

> But that defense is used so much we have a name for it. We call it the whore defense. And basically what it is, is you try to run down the victim so bad, you call them a whore to where either people don't care or think they deserved it. That's what that is. It's designed to play on prejudices they're hoping you have. In other words, it's designed on the low opinion of you. That is what that defense is.

Defense counsel objected that this argument attacked him "personally," accusing him of trickery; he did not request any remedy. The court responded that "[t]here would be no inferences or aspersions cast on defense counsel." Banks made no further objection. See *Palmer*, supra; *Pearson*, supra. And again, counsel is permitted wide latitude in closing argument, and there was no abuse of discretion. *Hudson*, supra.

6. Banks urges that he did not receive effective assistance of trial counsel. In order to prevail on this claim, Banks must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, the defendant must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, the defendant must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Banks complains that trial counsel should have objected when, in response to Banks's question to North's mother as to whether she knew North's friend, Nehemiah Thomas, and when she had last seen him, North's mother testified:

> Nehemiah was in jail during this time. And when he did get out of jail, he came. He called me and come [sic] to my house. And do you want me to tell you? Do you want me to tell you? Tell me. He said he was leaving because Genous had put him out and promised to kill him. He said, I will not be back to your house no more soon because Genous is going to get out and he is still running as far I know of.

First, trial counsel did not testify at the hearing on the motion for new trial. Appellate counsel filed an amendment to the motion for new trial, asserting ineffective assistance of trial counsel, and filed a "Motion to Admit Affidavit of Trial Counsel," with trial counsel's accompanying affidavit. In the affidavit, trial counsel stated that he had read the amended motion for new trial and "[a]ny failure to

properly object and to preserve for appeal any of the issues raised in the amended motion for new trial was not due to trial strategy and would have been due to error or oversight."

Banks did not subpoena trial counsel to testify at the hearing on his motion for new trial. At the hearing, Banks referred to trial counsel's affidavit, but the earlier "Motion to Admit Affidavit of Trial Counsel" was never ruled upon, and Banks did not tender the affidavit at the hearing. The State asserts that the affidavit was therefore not properly before the trial court, and thus no evidence of deficient representation was presented. While it is true that the failure to have trial counsel testify at the hearing on the motion for new trial makes overcoming the strong presumption that counsel's performance was within the wide range of reasonable professional conduct difficult, see *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002), it is also true that "trial courts on motion for new trial are authorized to consider as substantive evidence the information presented by competent affiants in properly-executed affidavits when the affidavit is made on personal knowledge and sets forth facts that would be admissible in evidence." *Dickens v. State*, 280 Ga. 320, 322, n. 2 (627 SE2d 587) (2006). The record is silent as to whether the trial court considered this affidavit.

In any event, as the character testimony was elicited during cross-examination by defense counsel, and North's mother gave counsel ample opportunity to terminate her answer before she made any improper statement, it is unlikely that the trial court would have granted a mistrial. See *Fulton v. State*, 278 Ga. 58, 63 (8) (597 SE2d 396) (2004). Banks does not now assert what other corrective measures the court might have taken, and, given the strength of the evidence against Banks, we cannot say that the trial court erred in determining that there was no reasonable probability that the outcome of his trial would have been different if trial counsel had made the now-suggested objection. See *Burgess v. State*, 278 Ga. 314, 315 (1) (602 SE2d 566) (2004).

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 19, 2007.

*Kenneth D. Kondritzer*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Edwina M. Watkins, Assistant Attorney General*, for appellee.