## S09A0016. PATTERSON v. THE STATE.
### (679 SE2d 716)

BENHAM, Justice.

Appellant Phillip Earl Patterson was convicted in 1987 of the malice murder and armed robbery of Bruce Keeter, an assistant manager of a fast-food restaurant in Columbus, Georgia, and the theft by taking of the victim's automobile.[1]

1. The State presented evidence that the victim died as a result of a bullet that struck him behind the right ear, traversed his brain, and lodged in his left temple. He was killed between 1:00 a.m. and 5:00 a.m. on September 14, 1987, and $373 and a zipped bank bag were missing from the restaurant. Several miles away from the restaurant, the victim's car was found with a broken passenger window and bloodstains. Timothy Morgan and Ronald Kinsman, former roommates and appellant's co-indictees, testified for the State. Morgan, who was awaiting trial and had been assured the death penalty would not be sought against him if he testified against appellant, testified that appellant owed Kinsman money and Kinsman demanded payment the week before the victim was killed. Shortly after the demand for payment, the trio broke into a home where appellant found a pistol. On the night of the murder, appellant arrived with the gun at the apartment shared by the co-indictees and the trio left together after 1:00 a.m. Appellant and Kinsman entered the fast-food restaurant and returned five minutes later. Kinsman had the keys to the victim's car and drove it away, while appellant and Morgan followed. They abandoned the victim's car and drove across a bridge where appellant, who had placed the pistol into the

---

[1] Mr. Keeter was found dead in the restaurant on September 14, 1986. The Muscogee County grand jury returned a true bill of indictment on December 30, 1986, charging appellant and two others with malice murder, armed robbery, and theft by taking, and appellant and one other with possession of a firearm by a convicted felon. Appellant was arrested in May 1987 and his trial on all charges except the firearm possession took place from August 10-15, 1987. The State sought the death penalty, but the jury, after returning its verdicts finding appellant guilty of all charges on August 15, recommended a sentence of life imprisonment at the conclusion of the punishment phase of the proceedings, also on August 15. A pro se motion for out-of-time appeal was filed April 5, 1988. On November 1, 2001, appellant's petition for habeas corpus relief was granted and appellant was afforded the opportunity to pursue an out-of-time appeal. A motion for new trial, filed within 30 days of the grant of the out-of-time appeal, was amended May 24, 2007, and the amended motion was heard on December 7, 2007. The order denying the amended motion was filed August 15, 2008, and appellant filed a timely notice of appeal on August 20. The appeal was docketed in this Court on September 3, 2008, and was submitted for decision on the briefs.

zipped bank bag which he had taken from the restaurant, threw the bag into the river. When they returned to the co-indictees' apartment, appellant gave money to Kinsman and said he would re-pay the remainder of his debt when he could. Kinsman later remembered he had left the victim's keys in the abandoned car and, fearing his fingerprints were on the keys, he and Morgan returned to the car, where Kinsman cut his finger when he broke the passenger window to gain access to the keys. After Morgan saw news reports that the victim had been killed, appellant denied having killed the victim and threatened to kill Morgan if he mentioned it. Appellant told Morgan that Morgan could not prove appellant killed the victim and that appellant's mother and brother would provide him with an alibi.

Kinsman, who had been convicted of the murder of the victim and had received the death penalty (see *Kinsman v. State*, 259 Ga. 89 (376 SE2d 845) (1989)), testified that appellant was interested in procuring a gun in order to perform robberies so that he could leave town. Kinsman stated he saw appellant break into a home and come out with a gun, and that he, Morgan, and appellant drove together to the fast-food restaurant where Kinsman and appellant entered the restaurant. Appellant took money from the victim, gave it to Kinsman, and told Kinsman to leave. Kinsman heard a gunshot after he left the building. Appellant exited the building and told Kinsman he had shot the victim.

A detective who questioned appellant shortly after his arrest testified appellant initially denied any involvement in the death of the victim but concluded the interview by stating that he had done it and his involvement could not be proved because no one had seen him commit the crime. A county jail inmate assigned to a cell adjacent to that of appellant testified appellant told him he had shot the victim.

The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of malice murder, armed robbery and theft by taking. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Citing former OCGA § 17-7-210 (e) and contending that the State did not provide a timely copy of appellant's custodial, inculpatory statement made to the inmate of the adjacent cell, appellant complains the trial court erred when it allowed the inmate in the cell next to appellant to testify about the contents of the inculpatory statement.

Former OCGA § 17-7-210, repealed by Georgia Laws 1994, p. 1895, § 1, effective January 1, 1995, entitled a defendant, upon request, to receive a copy of any statement made by him while in police custody ten days prior to trial. Despite a timely request for such statements, appellant did not receive until three days before

trial a copy of the police report containing the cellmate's statement which was made ten days before trial and which recounted the inculpatory statement purportedly made by appellant. The assistant district attorney received an oral report of the statement ten days before trial and a written report three days before trial. Relying on OCGA § 17-7-210 (e), the trial court determined the evidence was produced as soon as possible after its discovery, delayed the start of the trial for several hours so that defense counsel could interview the witness, and authorized additional investigatory funds for the defense.

The trial court's decision that OCGA § 17-7-210 (e) applied was not erroneous. *Broomall v. State*, 260 Ga. 220 (2) (391 SE2d 918) (1990). The trial court's determination that the statement was produced as soon as possible is upheld unless clearly erroneous (*Rife v. State*, 203 Ga. App. 353, 354 (416 SE2d 864) (1992)), and appellant provides nothing more than speculation to contest the trial court's determination. Accordingly, we conclude the trial court did not err when it denied appellant's motion to suppress the statement.

3. Appellant contends the trial court erred when it refused to permit appellant to play for the jury an audio recording of a post-arrest conversation between appellant and co-indictee Morgan. Defense counsel sought to admit the tape recording during his cross-examination of a police detective and again during appellant's testimony. In the recorded conversation, appellant denied having played a role in the murder of the victim. At the hearing on appellant's motion for new trial, the trial court ruled that appellant should have been allowed to play the audiotape in its entirety since co-indictee Morgan had testified to a portion of the conversation. See OCGA § 24-3-38. The trial court found the error to have been harmless since appellant's denial of involvement during the taped conversation was brought out on direct and cross-examination of appellant and co-indictee Morgan.

Assuming it was error to refuse to allow the recording to be played, the error does not require reversal of appellant's convictions since the person with whom appellant was having the conversation testified that appellant denied being involved in the shooting, and appellant testified and denied any involvement in the shooting. Appellant's recorded denial of involvement would have been cumulative of this evidence, making it highly probable that the exclusion of the tape recording did not affect the verdict. *Kennedy v. State*, 277 Ga. 588 (4) (592 SE2d 830) (2004).

4. Appellant next takes issue with the trial court's denial of his motions for mistrial made during the testimony of co-indictee Kinsman on the ground that Kinsman placed appellant's character in issue when he testified about prior bad acts purportedly commit-

ted by appellant. Kinsman did so by giving a non-responsive answer to a question put to him by the assistant district attorney and by explaining on cross-examination why he did not flee when appellant left him alone in the car the night the victim was killed.

The trial court instructed the jury to disregard the information contained in the nonresponsive answer. That action, coupled with the precept that "[a] nonresponsive answer that impacts negatively on a defendant's character does not improperly place the defendant's character in issue" (*Hansley v. State*, 267 Ga. 48 (3) (472 SE2d 305) (1996)), leads us to conclude that the trial court did not err when it denied appellant's motion for mistrial. *Banks v. State*, 281 Ga. 678 (3) (642 SE2d 679) (2007). Kinsman's testimony concerning his fear of appellant and his knowledge that appellant was a violent person was in response to defense counsel queries about the witness's failure to leave appellant or seek help from police when appellant left the witness alone shortly before the victim was killed. Inasmuch as the witness's responses were in explanation of his answer and a witness is entitled to explain his answer (*Fields v. State*, 176 Ga. App. 122 (335 SE2d 466) (1985)), and counsel will not be heard to object to testimony unfavorable to his client that he elicited (*Cofer v. State*, 166 Ga. App. 436 (3) (304 SE2d 537) (1983)), we find no error in the trial court's denial of the motion for mistrial.

5. Appellant maintains he was denied his constitutional right to effective assistance of counsel because trial counsel failed to object to portions of the State's closing argument that appellant believes were improper. Appellant takes issue with the lack of objection to comments made by the prosecuting attorney which purportedly referred to "future dangerousness" and comments which purportedly referred to appellant's invocations of his right to counsel and right to remain silent.

> To prevail on a claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct [cit., and t]he combined effects of counsel's error are considered in determining the prejudice prong. . . .

*Phillips v. State*, 285 Ga. 213 (5) (675 SE2d 1) (2009).

(a) During the State's closing argument, the assistant district attorney stated that defense counsel was "asking [the jury] to turn him loose, to let him walk out this courtroom, to let him pack up his

notebooks over there and ride down the elevator to the parking lot with you. . . . I'm asking you, don't turn [appellant] loose on our streets." At the hearing on appellant's motion for new trial, trial counsel testified that he did not object because he believed the prosecutor's argument had not reached the point at which an objection would be sustained, he did not believe that the overruling of his objection would be reversible error and, in light of those points, it was more important for counsel to maintain his credibility with the jury. In denying the amended motion for new trial, the trial court ruled that the argument "did not rise to the level that an objection should have been made on that point."

Even if we were to assume that the argument impermissibly raised during the guilt-innocence phase the specter of the defendant's future dangerousness and we were to assume trial counsel's failure to object constitutes deficient performance, in light of the evidence that appellant was the armed gunman who confronted and shot the victim and admitted his actions to a co-indictee, a jailmate, and investigating detectives, the assumed deficient performance created little, if any, actual prejudice to be considered in our assessment in Division 5 (c), infra, of the collective prejudice stemming from counsel's actual or assumed errors. See *Schofield v. Holsey*, 281 Ga. 809, 811-812, n. 1 (642 SE2d 56) (2007).

(b) During his closing argument, the assistant district attorney referred to appellant's admission to a detective that he had committed the crimes, appellant's immediate denial of involvement, and appellant's desire to talk with an attorney. The assistant district attorney then stated:

> And [defense counsel] says, you know, he makes that as if he's some great innocent man because he wants a lawyer. Well if he hadn't done anything, what did he want a lawyer for? I mean, a lawyer, I submit to you, will tell you not to tell the police anything. If he didn't want to talk, if he hadn't done anything, why does he not want to tell something, you know, because the only thing that can hurt him is admitting to the crime. But he wanted a lawyer, this great innocent man over here wanted a lawyer. And he wouldn't sign the form. He wouldn't even sign the form that he'd been advised of his rights. . . . He refused to sign the form. Why wouldn't he at least sign the form that he'd been advised of his rights? I mean, how can that hurt him? But he wasn't cooperating. He wasn't doing anything. Guilty people do that, I submit to you.

Trial counsel testified at the hearing on the motion for new trial

that he had not objected to the prosecutor's argument because he wished to maintain credibility with the jury and he believed appellant had "opened the door" and placed the subjects before the jury during his testimony by recounting his interview with police and repeatedly advising the jury that he had requested to speak with an attorney. The trial court apparently assumed trial counsel's failure to object constituted deficient performance since the trial court recognized that an attorney's unreasonable trial strategy could amount to deficient performance and concluded that, based on the facts of the case, "that point alone would not have prejudiced the outcome of this case."

The dissent believes the above-quoted portion of the assistant district attorney's closing argument is an improper comment on the defendant's right to remain silent and finds trial counsel's failure to object to it to be prejudicial as a matter of law, citing *Reynolds v. State*, 285 Ga. 70 (673 SE2d 854) (2009). *Reynolds* was decided 23 years after appellant's trial counsel was faced with the decision whether to voice an objection, and relies on *Mallory v. State*, 261 Ga. 625 (5) (409 SE2d 839) (1991), recognized as overruled on other grounds in *Clark v. State*, 271 Ga. 6 (5) (515 SE2d 155) (1999). In *Mallory*, decided four years after appellant was tried, this Court construed OCGA § 24-3-36 as providing that a comment upon a defendant's silence was far more prejudicial than probative, and made its holding prospective only — "from the date of publication of this opinion, December 26, 1991, . . . such a comment will not be allowed. . . ." In light of the prospective nature of the interpretation of OCGA § 24-3-36 in *Mallory*, we cannot apply the concept of prejudice as a matter of law to the case at bar.

(c) After considering the combined effect of the assumed instances of deficient performance, we conclude, as did the trial court, that appellant did not establish there is a reasonable probability that, but for counsel's errors, the outcome of his trial would have been different. *Schofield v. Cook*, 284 Ga. 240, 253 (663 SE2d 221) (2008); *Schofield v. Holsey*, supra, 281 Ga. at 811-812. Accordingly, the trial court did not err when it determined that appellant had not established that his constitutional right to effective assistance of counsel was violated.

*Judgment affirmed. All the Justices concur, except Sears, C. J., and Hunstein, P. J., who dissent.*

HUNSTEIN, Presiding Justice, dissenting.

I must respectfully dissent to Division 5 (c) of the majority opinion because trial counsel was deficient in failing to object during closing argument to the prosecution's repeated references to Patterson's invocation of his right to counsel and right to silence, see

Division 5 (b), and this deficient performance was sufficiently prejudicial to constitute ineffective assistance of counsel.

> The fact that a defendant exercised the right to remain silent may not be used against the defendant at trial. [Cit.] However, if the testimony concerning remaining silent is made "during a narrative on the part of the authorities of a course of events" and "apparently was not intended to, nor did it have the effect of, being probative on the guilt or innocence of the defendant," it is not prejudicial. [Cit.]

*Taylor v. State*, 272 Ga. 559, 561 (2) (d) (532 SE2d 395) (2000). Here, there was testimony from both a detective and from Patterson that after he was arrested and made some initial statements he invoked his right to counsel and declined to talk further. Although this testimony was not improper because it was made during a narrative regarding a course of events, the prosecution's use of the testimony as the basis of its closing argument, as set forth in Division 5 (b), was clearly intended to be probative on the issue of Patterson's guilt or innocence. See id. The prosecutor deliberately used against Patterson his exercise of his right to remain silent: "[i]f he didn't want to talk, if he hadn't done anything, why does he not want to tell something, you know, because the only thing that can hurt him is admitting to the crime." Compounding the comment on the right to remain silent, the prosecutor deliberately used against Patterson his right to be represented by counsel: "[i]f he hadn't done anything, what did he want a lawyer for?" It is unquestionable that trial counsel's failure to object to the argument and seek curative instructions was deficient performance. See, e.g., *Cheney v. State*, 233 Ga. App. 66 (1) (a) (503 SE2d 327) (1998) (reference in opening statement to defendant's silence upon arrest cured by trial court admonishing prosecutor, instructing jury that remarks of counsel are not evidence, and ultimately excluding related evidence).

The majority, however, found no reasonable probability that Patterson was prejudiced by counsel's deficient performance. As we have recently reiterated, the State is not permitted in criminal cases to comment upon a defendant's silence. "[I]n the situation of a criminal defendant, this failure to speak or act will most often be judged as evidence of the admission of criminal responsibility. Thus, the element of prejudice is *indisputable*." (Emphasis supplied.) *Reynolds v. State*, 285 Ga. 70, 71 (673 SE2d 854) (2009). The closing argument by the prosecutor in this case specifically and deliberately posited that Patterson's failure to speak should "be judged as evidence of the admission of criminal responsibility." Id. There is thus more than a reasonable probability that the prejudice created

by the prosecution's protracted improper argument, left to stand without objection, altered the outcome of the trial. I would recognize that the prosecutor's use against Patterson of the exercise of his constitutional rights involved such egregious misconduct as to deny Patterson a fundamentally fair trial in violation of his right to due process of law under the Georgia Constitution, which uncontrovertedly predates appellant's trial in 1987. See generally *Doyle v. Ohio*, 426 U. S. 610, 618-619 (96 SC 2240, 49 LE2d 91) (1976) (fundamentally unfair and deprivation of due process to afford suspect constitutional right and yet allow implications of exercise of that right to be used against him).

I am authorized to state that Chief Justice Sears joins this dissent.

DECIDED JUNE 29, 2009.

*James D. Lamb*, for appellant.

*J. Gray Conger, District Attorney, Wesley A. Lambertus, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.