A10A0863. WILSON v. THE STATE.
A10A0864. ROCKAMORE v. THE STATE.
(703 SE2d 400)

SMITH, Presiding Judge.

Cedric Rockamore and Anthony Wilson were convicted of armed robbery, burglary, four counts of aggravated assault, and possession of a firearm in the commission of a felony.[1] Their motions for new trial were denied, and they appeal, asserting various allegations of ineffective assistance of counsel. Rockamore also asserts the general grounds. Finding no error, we affirm.

---

[13] See *Wright v. State*, 297 Ga. App. 813, 817 (678 SE2d 506) (2009).

[1] The jury acquitted Rockamore and Wilson of murder and felony murder. One count of aggravated assault was nol prossed as to both appellants, two additional counts against Wilson were nol prossed, and a third was dead-docketed. On motion for new trial, the trial court granted a judgment of acquittal to Rockamore on a second count of felony murder.

*Case No. A10A0864*

1. Rockamore raises the general grounds, contending the State failed to present sufficient evidence to corroborate the testimony of the accomplice, Howell. We disagree.

> A defendant may not be convicted of a felony on the uncorroborated testimony of an accomplice. However, it is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict. The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it can not be said, as a matter of law, that the verdict is contrary to the evidence.

(Citations, punctuation and footnotes omitted.) *Barnett v. State*, 244 Ga. App. 585, 587 (2) (536 SE2d 263) (2000). Here, the victims testified that the robbery was committed by a total of three men. They entered the apartment, forced the occupants to strip, and asked them "where the dope and the money at." While the robbery was in progress, another resident of the apartment arrived at the front door with a companion. The resident unlocked the door but was unable to open it because it was chained. One of the occupants of the apartment unchained and began to open the door, and one of the robbers reached around the door and fired through the gap with a pistol, killing the resident in the hallway. The resident's companion was also wounded as he fled. A .40 caliber bullet was recovered from the resident's body, while a 9 mm bullet was recovered from the arm of his companion.

Howell testified that he, Wilson, Rockamore, and co-defendant Henry Taylor planned the robbery because the residents of the apartment "behind Lenox train station" were believed to keep drugs and cash on hand. Wilson gave Howell a .40 caliber pistol which he passed on to Taylor to give to Rockamore, while Taylor gave Howell a 9mm pistol. According to Howell, Taylor's girlfriend picked up Howell and Rockamore in a green Toyota Camry. She then picked up three other men and took them all to the robbery location and waited in the parking lot until after the robbery.

Howell also testified that he, Rockamore, and the others entered the apartment. They ordered the occupants to strip and ransacked the rooms searching for "the money and the drugs." During the robbery, two individuals arrived at the front door and knocked, and Rockamore went to the door with one of the occupants at gunpoint. Howell testified that Rockamore reached over the victim's shoulder and shot one of the men at the door; the other man fled, and Howell shot at him "to try and stop him." Howell and his cohorts then fled to the car and left the scene.

Taylor's girlfriend testified that she owned a green Toyota Camry and had driven Howell and Rockamore to an apartment complex near the Lenox MARTA station. She did not recall the name of the complex, but testified that she had driven Howell and Rockamore to only two complexes in Buckhead and that one of them was near the MARTA station.

Forensic testing found Howell's fingerprint on the 9mm pistol recovered after co-defendant Taylor was arrested on another charge. No fingerprints were found on the .40 caliber pistol recovered at the same time. Bullets recovered from the victim's body were identified as having been fired from the .40 caliber pistol, while the bullet which wounded his companion was identified as having been fired from the 9mm pistol.

"The sufficiency of the corroborating evidence is a matter for the jury, and if the verdict is based upon the slightest evidence of corroboration connecting an accused to a crime, even if it is circumstantial, it is legally sufficient." (Citation, punctuation and footnote omitted.) *Meridy v. State*, 265 Ga. App. 440, 442 (2) (594 SE2d 378) (2004). "If there is *any* evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value." (Citations and punctuation omitted; emphasis supplied.) *Drew v. State*, 256 Ga. App. 391, 393 (1) (568 SE2d 506) (2002).

The victims' testimony describing the perpetrators, their weapons, their conduct, and their locations during the robbery is consistent with the testimony of the accomplice and provides some corroboration.[2] *Metoyer v. State*, 282 Ga. App. 810, 812 (1) (a) (640 SE2d 345) (2006) ("victims' description of the perpetrators and their vehicle, as well as their testimony regarding the timing and method of the robbery" corroborative as consistent with accomplice's testimony). The testimony from a witness that she drove Rockamore and the accomplice to an apartment complex near the Lenox MARTA station provides some additional corroboration. *Baines v. State*, 276 Ga. 117, 119 (1) (575 SE2d 495) (2003) (corroboration in part by

---

[2] The jury was instructed on the corroboration of accomplice testimony.

evidence that appellant was driven to the vicinity of the victim's home on the day of the crime).

2. We next consider Rockamore's allegations of ineffective assistance of counsel. He complains that his trial counsel failed to object to a prosecutor's statements bolstering the credibility of his accomplice and also failed to object to a prosecutor's statement that the judge would decide the credibility of the accomplice's testimony.

(a) Rockamore points to a number of statements made by the prosecutor during closing argument, contending that the prosecutor "repeatedly vouched for the credibility of the accomplice." He asserts that his trial counsel was ineffective in failing to object. But

> [a]s a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial. court's discretion. This wide latitude encompasses the prosecutor's ability to argue reasonable inferences raised by the evidence. Accordingly, it is proper for a prosecutor to urge the jury to draw inferences from the evidence regarding the credibility of witnesses.

(Citations and punctuation omitted.) *Brown v. State*, 293 Ga. App. 633, 637-638 (1) (d) (ii) (667 SE2d 899) (2008). The prosecutor was allowed to argue the veracity of witnesses from the evidence, so long as she did not "state to the jury his or her personal belief about the veracity of a witness." (Citation, punctuation and footnote omitted.) *Navarro v. State*, 279 Ga. App. 311, 314 (2) (b) (630 SE2d 893) (2006).[3]

Only one of the statements cited by Rockamore appears to have indicated a personal belief on the part of the prosecutor. While responding to Rockamore's earlier argument that the State had failed to present a witness, she stated:

> They want to know why Andrew Fike, the white male, wasn't in the courtroom. Well, I'll tell you why. My job as a prosecutor is to prosecute the case. And I do not waste your time unless it can be corroborated. Fike could not be

---

[3] In support of his argument, Rockamore purports to quote our 1998 decision in *Cheney v. State*, 233 Ga. App. 66 (1) (a) (503 SE2d 327) (1998), that "it is unquestionable that trial counsel's failure to object to the argument and seek curative instructions was deficient performance." That phrase, however, appears nowhere in *Cheney* and seems to be a direct quotation from then-Presiding Justice Hunstein's *dissent* in *Patterson v. State*, 285 Ga. 597, 603 (679 SE2d 716) (2009). In any event, neither *Cheney* nor *Patterson* involved alleged bolstering in closing argument. Both dealt with the well-established principle that a prosecutor may not comment on a defendant's election to invoke his right to remain silent, and *Cheney* did not involve an ineffective assistance of counsel claim.

corroborated. While I believe Howell and I believe he's testifying truthfully because he —

Rockamore's counsel interrupted the prosecutor, "Your honor, objection to what she believes is irrelevant and —" and the prosecutor immediately stated, "Strike it. Strike it, I'll back up." Rockamore's counsel therefore did object, and his objection was successful.

. While Rockamore asserts that his trial counsel should have further moved for a mistrial, such decisions generally fall within the ambit of strategy and tactics. *Matiatos v. State*, 301 Ga. App. 573, 576 (2) (b) (688 SE2d 385) (2009) (decision not to renew motion for mistrial strategic). Here, Rockamore failed to call his trial counsel as a witness at the motion for new trial hearing.

> Without such testimony, in the absence of other evidence that trial counsel's performance was deficient, the trial court is to presume that trial counsel's actions are part of trial strategy. In the absence of trial counsel's testimony, it is extremely difficult to overcome this presumption.

(Citations and punctuation omitted.) *Temple v. State*, 253 Ga. App. 606, 609 (2) (a) (561 SE2d 132) (2002). Without further evidence, "any decision not to object is presumed to be a strategic one which will not support a claim of ineffective assistance of counsel." (Citation and footnote omitted.) *Futch v. State*, 286 Ga. 378, 383 (2) (687 SE2d 805) (2010).

(b) Similarly, Rockamore's contention that his trial counsel was ineffective in failing to object to a question directed to Howell must fail. Howell acknowledged on direct examination that he had entered into a negotiated plea of guilty that required him to testify truthfully in this case. On cross-examination, Rockamore's counsel suggested, and Howell agreed, that "the person that's going to decide whether you testified truthfully is counsel sitting at the prosecutor table, right?" He attacked Howell's credibility by pointing out numerous inconsistencies between his statement to police and his testimony at trial. He further suggested that Howell had a strong motive to testify in accordance with the desires of the prosecution. Finally, he again suggested, and Howell again agreed, that "if you don't convince this lady that you're telling the truth, you're still on the hook for life plus 70 years, aren't you?"

On redirect examination, the prosecutor asked Howell about the terms of his plea, including the rights of which he was informed and which he waived, and the requirement that he testify truthfully. She asked, and he agreed, that his sentence was for the judge to determine and that the judge instructed him that he must testify

truthfully. She concluded: "So ultimately, it's the judge who's going to decide whether or not you testify truthfully, right?"

Rockamore contends that this suggested to the jury that the judge, not the jury, would judge witness credibility in general, rather than solely on the issue of Howell's probation, and that his trial counsel was ineffective in failing to object. But Rockamore's counsel himself opened this line of questioning on cross-examination by twice asserting that the prosecutor would determine whether Howell had testified truthfully, and in the absence of his testimony we must presume that to be a strategic decision. Having made that decision, trial counsel could not object because "[a] party cannot claim error where he himself committed or invited the error." *Westmoreland v. State*, 192 Ga. App. 173, 176-177 (2) (b) (384 SE2d 249) (1989). And "(f)ailure to raise a meritless objection cannot constitute ineffective assistance of counsel. [Cits.]" *Jones v. State*, 294 Ga. App. 854, 856 (3) (670 SE2d 506) (2008). Moreover, given trial counsel's line of questioning on this topic, it is unlikely that this exchange misinformed the jury as to their duty to judge witnesses' credibility in the trial of the case, particularly since the trial court instructed the jury that it must determine the credibility or believability of the witnesses and the factors it might consider in making that determination.

Finally, Rockamore's trial counsel succeeded in obtaining a jury verdict of not guilty on two counts of murder. This "strongly supports the conclusion that the assistance actually rendered by defendant's trial counsel fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render." (Citation and punctuation omitted.) *Jackson v. State*, 281 Ga. App. 506, 511 (3) (636 SE2d 694) (2006). Rockamore has not rebutted the presumption that counsel's actions were strategic, and he has not shown that counsel's failure to object, move for a mistrial or request curative instructions had any negative effect on the outcome of the trial in light of his acquittal on two counts of murder. *Parks v. State*, 281 Ga. App. 679, 683 (6) (637 SE2d 46) (2006) (appellant failed to call counsel, so actions presumed strategic; appellant charged with murder but convicted of voluntary manslaughter, so he could not show negative effect on outcome). "He has thus failed to meet his burden as to either prong of the *Strickland* test, and the trial court's denial of his motion for new trial must be affirmed." Id.

### Case No. A10A0863

3. Wilson raises three allegations of ineffective assistance of counsel: that trial counsel was ineffective in failing to seek a *Jackson-Denno* hearing; that trial counsel was ineffective in failing

to object to testimony regarding his purchase of marijuana from one of the victims; and that trial counsel was ineffective in failing to object to testimony from a police detective regarding the same purchase of marijuana.

The same general considerations with respect to Rockamore's claims apply to Wilson's allegations of ineffectiveness. Wilson, like Rockamore, was acquitted of two counts of murder, and Wilson, like Rockamore, did not call his trial counsel at the hearing on his motion for new trial.[4]

(a) With respect to the absence of a *Jackson-Denno* hearing, the evidence adduced at the hearing on Wilson's motion for new trial shows that Wilson was not a suspect in these crimes at the time of his arrest, that he was informed of his *Miranda* rights, that he did not ask for an attorney, and that the statement was made without threat of force or promise of reward. See *Mitchell v. State*, 250 Ga. App. 292, 296 (2) (a) (551 SE2d 404) (2001). The trial court explicitly found that Wilson was properly informed of his rights and waived those rights and, had a *Jackson-Denno* hearing been held, the statement would have been admitted. Wilson "has not demonstrated that trial counsel was deficient for failing to seek suppression of his custodial statement because he has failed to provide a meritorious basis to contest its admission." (Citation, punctuation and footnote omitted.) *Bunkley v. State*, 278 Ga. App. 450, 454 (1) (b) (629 SE2d 112) (2006).

(b) Wilson complains that his trial counsel was ineffective in failing to object to testimony from one of the victims and a police officer regarding his prior purchase of marijuana from one of the victims. But

> drug use showed [appellant's] motive to rob a home where he believed illegal drugs and money would be found. Although motive is not an essential element in proving the crimes charged, the State is entitled to present evidence to establish that there was a motive, and evidence that [appellant] used drugs is relevant to prove that he had a motive for committing the crimes and is not rendered inadmissible by the fact that it incidentally puts his character in issue.

(Citation omitted.) *Brady v. State*, 270 Ga. 574, 578-579 (5) (a) (513 SE2d 199) (1999). The accomplice, Howell, testified that the motive

---

[4] In Wilson's case, it appears that his trial counsel is deceased. But this does not change the rule that counsel's decisions regarding objections and motions are presumed strategic in the absence of other evidence. See *Jackson v. State*, 230 Ga. App. 292, 293-294 (1) (496 SE2d 315) (1998) (trial counsel deceased). No explanation was given for Rockamore's counsel's absence from the hearing on Rockamore's motion for new trial.

for the robbery was that the victims kept drugs and cash in the apartment. Howell also testified without objection that Wilson planned the robbery and knew that drugs and money were kept in the house "because he had been there before. He had dealt with [the victim] before on previous occasions." "Evidence is harmless where admissible evidence of the same fact is before the jury." (Citations and punctuation omitted.) *Kennedy v. State*, 207 Ga. App. 798, 799 (2) (c) (429 SE2d 167) (1993). And "(f)ailure to raise a meritless objection cannot constitute ineffective assistance of counsel. [Cits.]" *Jones*, supra, 294 Ga. App. at 856 (3).

*Judgments affirmed. Mikell and Adams, JJ., concur.*

DECIDED NOVEMBER 17, 2010 — ▮▮▮▮▮▮▮

*Maurice G. Kenner*, for appellant (case no. A10A0863).
*J. M. Raffauf*, for appellant (case no. A10A0864).
*Paul L. Howard, Jr., District Attorney, John O. Williams, Assistant District Attorney*, for appellee.