### A11A1026. SIMONS v. THE STATE.
(717 SE2d 319)

DOYLE, Judge.

Following a jury trial, Jennifer Simons was convicted of robbery by sudden snatching.[1] She appeals, arguing that the trial court erred by admitting evidence of her prior drug use and that she received ineffective assistance of counsel. We affirm, for reasons that follow.

Viewed in favor of the verdict,[2] the evidence shows that on September 27, 2007, Simons drove her husband's cousin, John Roberts, to a shopping center containing a fabric store and parked in the alley behind the shopping center. Roberts exited the vehicle and stood by the door to the fabric store until Hanna Joy, a customer, approached. Roberts opened the door, blocked Joy's path, and then "violently" grabbed her purse strap. Joy refused to release her purse, and she screamed, wrapped her arms around a column, and locked her fingers, while Roberts continued to pull on the purse. Eventually, one of the straps broke, and Roberts fell backward and then got up and ran.

Joy dropped her other packages and chased Roberts, screaming, "Call 911. Somebody help me. Somebody please help me." Simons, who was still in the parked vehicle facing away from the store, saw Roberts running and began backing up toward him. Roberts ran toward the car, and Simons stopped and "let him in." Simons then

---

[1] OCGA § 16-8-40 (a) (3).
[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

changed gears and began to pull forward, and Joy, who was standing in front of the car, jumped onto the hood so that the car would not strike her.

Meanwhile, two men from an adjacent building heard Joy's screams and ran to assist her. As Simons attempted to drive away with Joy still on the hood of her car, one of the men leaned into the car and knocked it out of gear, while Simons resisted him and Roberts yelled, "Go, go, go." As Simons reached for the steering wheel again, the second man reached in and grabbed the keys. One of the men then pulled Roberts out of the car and restrained him until the police arrived.

Roberts pleaded guilty to robbery by sudden snatching, and he testified for the State at Simons's trial. According to Roberts, he met Simons at an acquaintance's house, and they drove around in Simons's car while Roberts smoked crack cocaine; he did not know if Simons was smoking crack, but he stated that Simons used to "smoke[ ] from time to time back a long time ago. . . ." Roberts further testified that when he exited Simons's vehicle at the shopping center, he told her that he "was going to go panhandling or get some money or something, and then in passing, [he] mentioned maybe [he]'ll just take — take a purse. . . ." Simons told him not to, but she remained in the car at the same location until Roberts returned. The State also introduced Roberts's recorded statement to the police, in which Roberts stated that Simons bought crack on the day of the robbery and that both of them smoked crack before the robbery. According to Roberts, Simons knew that he was going to attempt to get money so they could buy food and more crack cocaine.[3]

Officer Jason Pagliaro, who responded to the 911 call, testified that when he asked Simons why she was in the area, she responded that she was picking Roberts up from work at Ethan Allen Furniture. According to Pagliaro, there was not an Ethan Allen Furniture store in the shopping center, and the closest store was over 100 miles away.

Simons testified at trial, and she admitted during direct examination by defense counsel that she had previously been addicted to crack, but had been "clean" for four years. Simons stated that she took Roberts to the shopping center so that he could pick up money from his employer and that she panicked when she saw him running toward her car with a purse. According to Simons, she cranked the car because she "wanted to leave the scene," but Joy then jumped on

---

[3] Consistent with his testimony at trial, Roberts told the police that he told Simons that he was going to take someone's purse, and she told him not to do so; she still, however, elected to wait for him after he exited the car. Roberts also asked the police to "[j]ust kinda go easier on [Simons], because I'll take the full blunt [sic]. . . ."

the hood, and Simons "wasn't about to go drive off with a woman on the hood of [her] car. [Simons] didn't know what to do, so [she] stopped the car[,] and the next thing [she knew], the other two gentlemen . . . were near the car."

At the conclusion of the trial, the jury found Simons guilty of robbery by sudden snatching. The trial court denied her subsequent motion for new trial, and this appeal followed.

1. Simons contends that the evidence regarding her previous drug use should not have been admitted, arguing that it improperly injected her character into evidence in violation of OCGA § 24-2-2. Simons failed, however, to object to the introduction of such evidence, and in fact, defense counsel elicited it. Thus, she has waived any argument that the trial court erred by admitting evidence of her prior drug use.[4]

2. Simons also argues that trial counsel was ineffective by failing to object to and introducing evidence regarding her prior drug use. We disagree.

> To establish ineffective assistance of counsel under *Strickland v. Washington*,[5] [Simons] must prove (1) that h[er] trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced h[er] defense that a reasonable probability exists that the result would have been different but for the deficiency. . . . The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous. Additionally, a court is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one.[6]

Here, Roberts told the police that he committed the robbery to obtain money so that he and Simons could purchase more drugs and that Simons knew he was going to do so. Thus, Simons's drug use showed her motive to participate in the robbery of Joy.

Although motive is not an essential element in proving the

---

[4] See *Simmons v. State*, 299 Ga. App. 21, 25 (4) (681 SE2d 712) (2009); *Sampson v. State*, 282 Ga. 82, 83 (2) (646 SE2d 60) (2007).

[5] 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[6] (Citations and punctuation omitted.) *Jackson v. State*, 284 Ga. App. 619, 627-628 (11) (644 SE2d 491) (2007).

crimes charged, the State is entitled to present evidence to establish that there was a motive, and evidence that [Simons] used drugs is relevant to prove that [s]he had a motive for committing the crime[ ] and is not rendered inadmissible by the fact that it incidentally puts h[er] character in issue.[7]

Accordingly, the evidence was admissible,[8] "[a]nd failure to raise a meritless objection cannot constitute ineffective assistance of counsel."[9]

*Judgment affirmed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED OCTOBER 4, 2011.

*Jennifer R. Burns*, for appellant.
*Larry Chisolm, District Attorney, David E. Perry, Anna Guardino, Assistant District Attorneys*, for appellee.

---

[7] *Brady v. State*, 270 Ga. 574, 578-579 (5) (a) (513 SE2d 199) (1999).

[8] See *Bryant v. State*, 288 Ga. 876, 889 (10) (a) (708 SE2d 362) (2011) (evidence of the defendant's drug usage and dealing was admissible because the State introduced evidence that the defendant's motive in committing the crimes was to obtain drugs or money to be used in a drug transaction); *Benford v. State*, 272 Ga. 348, 350 (3) (528 SE2d 795) (2000) ("given the role crack cocaine played in the events leading up to the murder of the victim and the reasonable inference the jury could have drawn from the evidence that [the defendant's] motive in murdering the victim was to obtain the victim's drugs or money to purchase the drug from others," testimony that the defendant possessed crack cocaine when arrested was admissible); *Brady*, 270 Ga. at 578-579 (5) (a) (evidence of the defendant's drug usage and dealing was admissible because the State introduced evidence that the defendant's motive in committing the crimes was to obtain drugs or money to be used in a drug transaction); *Wilson v. State*, 306 Ga. App. 827, 833 (3) (b) (703 SE2d 400) (2010) (evidence that the defendant previously purchased drugs from robbery victim showed motive for the robbery and was therefore admissible).

[9] (Punctuation omitted.) *Wilson*, 306 Ga. App. at 834 (3) (b).