A08A1342. DEXTER v. THE STATE.
(667 SE2d 172)

RUFFIN, Presiding Judge.

A jury found Demetrius Dexter guilty of child molestation.[1] In two enumerations of error, Dexter challenges the sufficiency of the evidence. In a third enumeration, Dexter contends that the trial court erred in admitting his statement. For reasons that follow, we disagree and affirm.

1. The evidence, construed favorably to the verdict,[2] demonstrates that in July 2005, 15-year-old J. W. was living with her mother, stepfather, sister, and three brothers. Dexter, a family friend in his late twenties, also lived with the family. According to the

---

[1] The jury acquitted Dexter of one count of statutory rape.

[2] See *Lewis v. State*, 278 Ga. App. 160 (628 SE2d 239) (2006).

mother, she became concerned regarding the "closeness" between Dexter and her daughter. Specifically, the mother testified that she would see the two, standing face to face and whispering, and that they would both leave the house and be gone "for hours." Because of her concerns, the mother insisted that Dexter move from the house at the beginning of November 2005.

In January 2006, the mother saw a ring fall out of J. W.'s shirt, and the girl claimed it was a "friendship ring" from Dexter. After the mother took the ring from her daughter, the two fought and, several days later, J. W. ran away from home. Law enforcement was contacted, and Investigator Lisa Carr of the Barrow County Sheriff's Office was assigned to the case. The mother told Carr that J. W. might be found in the company of Dexter. On January 20, 2006, Carr located Dexter, read him his *Miranda* rights, and questioned him about J. W.'s whereabouts. Dexter admitted to helping J. W., and he took Carr to J. W.'s location.

Carr spoke with J. W., who claimed that her mother had beaten her. She also told Carr that she had gotten in an argument with her sister, who told her mother that J. W. and Dexter were engaged in a sexual relationship. J. W., however, denied having a sexual relationship with Dexter. Carr called the mother to discuss the situation, and the mother brought letters written by J. W. to Dexter, referring to their relationship. During the interview, Carr looked through J. W.'s high school "agenda," which contained notations stating that "Kitten loves Swat" and "Swat loves Kitten." The agenda also had an entry dated August 22 noting that J. W. and "Swat" had taken their first shower together. J. W. had a cell phone with her containing a listing for "Swat." Carr dialed the number from the phone, and Dexter's phone began to ring, showing an incoming call from "Kitten."

At this point, Carr read Dexter his *Miranda* rights a second time before questioning him about possible child molestation charges. When confronted with J. W.'s agenda, Dexter admitted that he had been involved in a sexual relationship with J. W. and that the two had showered together. He further admitted that he went by the nickname "Swat" and that J. W. was known as "Kitten." Based upon this and other evidence, the jury found Dexter guilty of child molestation for exposing his sexual organ to a child under 16 while showering.

(a) On appeal, Dexter contends that the evidence is insufficient to sustain his conviction because there is no evidence that he exposed his sexual organ to J. W. while showering. In reviewing this contention, we view the evidence favorably to the verdict, and Dexter is no

longer presumed innocent.[3] Moreover, as an appellate court, we neither weigh the evidence nor assess witness credibility, but only ascertain whether the evidence was sufficient to prove the crime charged beyond a reasonable doubt.[4] Employing this standard, we find the evidence sufficient to sustain the jury's verdict.

Assuming that Dexter's argument is true — that there was no direct evidence that he exposed his phallus to J. W. in the shower — it does not necessarily follow that he is entitled to acquittal, as a conviction can be based upon circumstantial rather than direct evidence.[5] We will uphold such a conviction if the proved facts are consistent with the hypothesis of guilt, and exclude every other *reasonable* hypothesis but the guilt of the accused.[6] "When the evidence meets this test, circumstantial evidence is as probative as direct evidence."[7] Moreover, it is for the jury to decide whether a hypothesis is reasonable.[8] Here, the jury was authorized to conclude that, given the nature of Dexter's relationship with J. W., he failed to don clothing while showering with her and exposed his phallus to the child. Accordingly, this argument presents no basis for reversal.

(b) In a related argument, Dexter asserts that the trial court erred in failing to direct a verdict on the child molestation charge "based on a fatal variance between the allegata and probata." We disagree.

"[I]f an indictment avers that an offense is committed in one particular way, the proof must so show it, or there will exist a fatal variance."[9] We do not, however, apply an overly technical application of this rule, but focus instead on materiality.[10] Thus, the necessary inquiry

> is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the

---

[3] See *Flanders v. State*, 285 Ga. App. 805 (1) (648 SE2d 97) (2007).

[4] See id.

[5] See *Joiner v. State*, 257 Ga. App. 375 (1) (571 SE2d 430) (2002).

[6] See id.

[7] (Punctuation omitted.) Id. at 375-376.

[8] See id.

[9] *Gentry v. State*, 212 Ga. App. 79, 83 (4) (441 SE2d 249) (1994).

[10] See *Pippins v. State*, 263 Ga. App. 453, 456 (3) (588 SE2d 278) (2003).

same offense. Only if the allegations fail to meet these tests is the variance fatal.[11]

Here, the indictment charged Dexter with the offense of child molestation for doing "an immoral and indecent act in the presence of [J. W.], a child under 16 years of age, with intent to arouse or satisfy the sexual desires of said accused by exposing his sexual organ to [J. W.] while showering with [her]." Again, Dexter argues that the State failed to establish that he exposed his phallus to J. W. and that this omission constitutes a fatal variance. For the reasons discussed in Division 1 (a), however, there was sufficient evidence from which the jury could infer that Dexter exposed his sexual organ to J. W. and thus we see no variance of proof. Accordingly, the trial court was not required to direct a verdict on this basis.[12]

2. In his final enumeration of error, Dexter contends that the trial court erred in admitting his statement. Specifically, Dexter argues that Carr engaged in trickery to coerce his statement and thus it was not voluntary. The trial court, however, found that the statement was freely and voluntarily given. We find no error in this ruling.

" 'Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal.' "[13] The evidence shows that, when Carr interviewed Dexter the second time, she placed a waiver of rights form in front of him that had "child molestation" written on it. Dexter, who began crying, began to sign the document before pushing it away, stating "[t]hat goes a lot deeper than I'm ready for." When Dexter said he did not understand why he was being charged with molestation, Carr responded that she was "not saying this is all [Dexter's] fault." Carr then showed him J. W.'s agenda, and said that it was "one thing [they would] have to get out of the way." After this colloquy, Dexter signed the waiver and spoke to Carr.

"[T]o make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."[14] Police can, however, encourage a defendant to tell the truth without rendering a confession involuntary.[15] Even an emotional appeal does not make a confession involuntary as long as the means employed are not calculated to

---

[11] Id.

[12] See *Colon v. State*, 275 Ga. App. 73, 75 (1) (619 SE2d 773) (2005).

[13] *Mezick v. State*, 291 Ga. App. 257 (1) (661 SE2d 635) (2008).

[14] (Punctuation omitted.) *Robbins v. State*, 290 Ga. App. 323, 328 (3) (659 SE2d 628) (2008) (quoting OCGA § 24-3-50).

[15] See *Stinski v. State*, 281 Ga. 783, 784-785 (2) (a) (642 SE2d 1) (2007).

procure an untrue statement.[16] Here, Carr may have, to some extent, coaxed Dexter into providing the statement. In so doing, however, she did not offer any hope of benefit or fear of injury. Given these facts, we cannot say that the trial court erred in finding Dexter's statement to be voluntary.[17]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED AUGUST 22, 2008.

*Kathleen J. Anderson*, for appellant.
*Richard K. Bridgeman, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.

---

[16] See *State v. Woods*, 280 Ga. 758, 759 (632 SE2d 654) (2006).
[17] See *Valentine v. State*, 289 Ga. App. 60, 62 (2) (656 SE2d 208) (2007).