**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 18, 2014**

# In the Court of Appeals of Georgia

A13A2385. McKINNEY v. THE STATE.                                    DO-088 C

DOYLE, Presiding Judge.

Following a jury trial, Micah Andre McKinney was convicted of possession of marijuana with the intent to distribute[1] and possession of more than one ounce of marijuana.[2] He appeals the denial of his subsequent motion for new trial, arguing that (1) the trial court erred by denying his motion to suppress; (2) the trial court erred by conducting the motion to suppress in the presence of the jury; and (3) he received ineffective assistance of counsel. For the reasons that follow, we affirm.

---

[1] OCGA § 16-13-30 (j) (1).

[2] OCGA § 16-13-30 (j) (1).

Viewed in favor of the verdict,[3] the evidence shows that during the evening on April 20, 2011, Officer Corey Tate was working as a K-9 police dog handler when he observed a car operating on the highway without tail or tag lights. When Officer Tate made contact with the vehicle, the driver, McKinney, changed lanes without signaling. Officer Tate executed a traffic stop and approached the car, which also contained a male passenger, Jerrell Manghane. After McKinney conceded that he had been driving without his lights, Officer Tate directed him to exit the vehicle, advised him of his *Miranda*[4] rights, and began writing him a courtesy warning. McKinney, who seemed nervous, told Officer Tate that he lived in Chattanooga but had come to Atlanta to take his son home to Decatur. Before turning his back on McKinney and approaching the car to speak with Manghane, Officer Tate asked McKinney for permission to pat him down for weapons. McKinney consented and began to "jerk everything out of his pocket."

---

[3] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

After confirming that McKinney did not have any weapons, Officer Tate approached the car, obtained Manghane's identification, and asked Manghane about their reason for being in the area. Manghane, who seemed nervous and evasive, stated that he and McKinney were on the way to Atlanta so Manghane could see his aunt; Manghane did not mention McKinney's son.

Based on the men's inconsistent stories, Officer Tate believed they were being deceitful, and he asked McKinney if he had anything illegal in the vehicle. McKinney replied that he did not, offered to allow the officer to search the trunk, and eventually agreed to allow the officer to search the vehicle. When Officer Tate asked McKinney to sign the consent form for the search, McKinney withdrew his consent after Manghane advised him that he did not have to allow the search.

Officer Tate then asked Officer Pullen, who was already on the scene, to retrieve his K-9 dog. The dog performed a free-air sniff around the vehicle, and alerted twice, once on the driver's side and once on the passenger's side of the car. Police then searched the car and found three-quarters of a pound of marijuana on the backseat floorboard behind the driver's seat. The marijuana was packaged in seven small baggies, which were contained in a Ziploc bag, which was contained in a large,

white, plastic bag; the officer who searched the car could smell the odor of raw marijuana inside the car when he manipulated the bag.

Manghane, who was also charged, entered a guilty plea prior to trial. At the conclusion of the evidence, the jury found McKinney guilty of possession of more than one ounce of marijuana and possessing marijuana with the intent to distribute. McKinney appeals the denial of his subsequent motion for new trial.

1. McKinney argues that the trial court erred by denying his motion to suppress. We disagree.

There are three principles we apply when reviewing a trial court's ruling on a motion to suppress:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[5]

---

[5] (Punctuation omitted.) *Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013). We recognize that "[w]hen the controlling facts are not in dispute, such as facts discernible from a videotape, we conduct a de novo review of both the facts

4

The United States Supreme Court recently explained the standard for reviewing a finding of probable cause based on a drug-detection dog's alert:

> The court should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And the court should then evaluate the proffered evidence to decide what all the circumstances demonstrate. If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause. If, in contrast, the defendant has challenged the State's case (by disputing the reliability of the dog overall or of a particular alert), then the court should weigh the competing evidence. . . . The question – similar to every inquiry into probable cause – is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test.[6]

and the law in determining the admissibility of the statement." *Dennis v. State*, 293 Ga. 688, 691 (2) (748 SE2d 390) (2013). Here, although there was a videotape of the traffic stop, a portion of the dog's actions depicted therein are obscured by McKinney's car, and the controlling facts are not undisputed. Therefore, the de novo standard of review is inapplicable in this case.

[6] *Florida v. Harris*, ___ U. S. ___, ____ (II) (133 SCt 1050, 185 LE2d 61) (2013).

Here, the dog's handler, Officer Pullen, testified that he and his dog, Simba, which he had for four years, were trained and certified each year. As of November 2011, Officer Pullen had conducted 786 searches with Simba. McKinney did not challenge Simba's training, however, but instead argued that the officers did not have probable cause to conduct the search because Simba did not in fact alert during the search, but instead stopped to relieve himself.

Officer Pullen testified that he walked Simba around the vehicle, and while he was near the driver's side door, Simba indicated that he was "working odor" by raising his head and wagging his tail. Officer Pullen walked Simba back around the car, and Simba sat down on the driver's side, indicating a final alert. Officer Pullen then walked him to the passenger's side, where Simba again indicated he was working odor and then attempted to indicate an alert by sitting, but was unable to complete the alert because he had to relieve himself.[7] Officer Tate also testified that he saw Simba alert on the driver's side door, as did a third officer on the scene. McKinney points out, however, that the videotape of Simba's search conflicted with Officer Pullen's testimony that Simba alerted on the driver's door by sitting down.

---

[7] According to Officer Pullen, Simba was experiencing stomach distress and had relieved himself in the back of the patrol car immediately prior to the search.

Whether Simba in fact alerted on the car was a question of fact for the trial court, which we must accept unless clearly erroneous. Officer Pullen's testimony regarding his experience with Simba and his observations and conclusions regarding the dog's behavior was sufficient to support the conclusion that he alerted on the car. Moreover, "[i]n reviewing the trial court's denial of [McKinney's] motion to suppress, we consider whether the totality of the circumstances, and not merely the drug dog's alert, supports a finding of probable cause."[8] Here, the officers' testimonies regarding Simba, along with Officer Tate's testimony regarding the conflicting stories between the two men and their nervousness, was sufficient to support the trial court's denial of the motion to suppress.[9]

2. McKinney contends that the trial court erred by conducting the motion to suppress during the trial because it deprived him of his Fourth Amendment right to testify at the motion to suppress in order to protect his Fifth Amendment right to remain silent at trial. We find no basis for reversal.

McKinney filed his motion to suppress on Friday, October 28, 2011, two business days before the November 2, 2011 trial. Immediately before trial, counsel

---

[8] *Dawson v. State*, 238 Ga. App. 263, 265 (1) (518 SE2d 477) (1999).

[9] See id.

advised the court that McKinney had filed a motion to suppress, and the court indicated that it would hear the motion during the course of the trial. Trial counsel responded, "Okay, I'll do it at that stage." Trial counsel did not advise the court at that time that McKinney wished to testify at the suppression hearing, nor did counsel do so before the trial court ruled on the motion to suppress.

"[T]he trial court has a broad discretion in regulating and controlling the business of the court, and the appellate court should never interfere with its exercise unless it is made to appear that wrong or oppression results from its abuse, or the court in some manner takes away rights the parties have under the law."[10] Here, McKinney testified at the hearing on his motion for new trial that he did not observe Simba sit down during the free-air search, in contrast to the officers' testimonies that Simba sat down and alerted on the car. After hearing McKinney's testimony, the trial court denied the motion for new trial, noting that he considered and rejected trial counsel's argument at the suppression hearing that the dog never alerted. The court recognized that although conducting a motion to suppress during trial "is not the best protocol," the court was not willing to permit a defendant to delay trial to conduct a

[10] (Punctuation omitted.) *Christopher v. State*, 262 Ga. App. 257, 264 (6) (585 SE2d 107) (2003).

hearing on an untimely suppression motion. Given the timing of the motion, the trial court's consideration of the argument that the dog failed to alert, and McKinney's failure to advise the court that he wished to testify before the court ruled on the motion to suppress, we find no abuse of discretion in conducting the suppression hearing during the trial.[11]

3. Finally, McKinney contends that trial counsel was ineffective by failing to object to the trial court's decision to conduct the motion to suppress in the presence of the jury.

> To establish ineffective assistance of counsel under *Strickland v. Washington*,[12] [McKinney] must prove (1) that h[is] trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced h[is] defense that a reasonable probability exists that the result would have been different but for the deficiency. The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant,

---

[11] See *Weaver v. State*, 137 Ga. App. 470, 471 (4) (224 SE2d 110) (1976) ("A motion to suppress evidence relating to a line-up identification was reserved by the trial judge until the evidence was submitted, and it was not error to wait until the trial to make this determination. The court has a broad discretion to conduct the trial as it sees fit, and no abuse has been shown in the method the court used in this instance to try the case.").

[12] 466 U. S. 668 (104 SCt 2052, 80 LEd2d 674) (1984).

findings that this Court does not disturb unless clearly erroneous. Additionally, a court is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one.[13]

In this case, it was within the trial court's discretion to conduct the motion to suppress hearing during the trial, and McKinney has not demonstrated that testifying at the suppression hearing outside the presence of the jury would have changed the outcome of the trial. Furthermore, given Manghane's testimony at trial that he helped McKinney locate a drug dealer and purchased $900 worth of marijuana at McKinney's request, McKinney has failed to demonstrate that a reasonable probability exists that the outcome of the trial would have been different but for trial counsel's purported deficiency. Because McKinney has failed to establish prejudice, we find no error in the trial court's denial of the motion for new trial on the basis of ineffective assistance of counsel.[14]

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[13] (Punctuation and footnotes omitted.) *Simons v. State*, 311 Ga. App. 819, 821 (2) (717 SE2d 319) (2011), quoting *Jackson v. State*, 284 Ga. App. 619, 627-628 (11) (644 SE2d 491) (2007).

[14] See, e.g., *Mason v. State*, ___ Ga. App. ___, ___ (3) (c) (Case No. A13A2296, decided Jan. 24, 2014).

10