**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 20, 2017**

# In the Court of Appeals of Georgia

A17A0172. HARRIS v. THE STATE.

BARNES, Presiding Judge.

Bruce Ervin Harris was indicted for trafficking marijuana and possession of marijuana with intent to distribute at Atlanta Hartsfield Jackson International Airport. The trial court granted the State's motion to quash Harris's subpoena for all records and documents pertaining to the canine and its handler involved in the detection of drugs in Harris's luggage. The trial court certified its order for immediate review, and this Court granted Harris' application for an interlocutory appeal of the trial court's order. This appeal ensued.

We review the grant of a motion to quash a subpoena under the abuse of discretion standard of review. *Bazemore v. State*, 244 Ga. App. 460, 463-464 (2) (535 SE2d 830) (2000). So viewed, the record reveals that Homeland Security Investigations officers received a tip about the flight Harris was on originating from San Francisco. When he arrived at Hartsfield-Jackson International Airport, the luggage from Harris's flight was

removed by agents and lined up in two rows. A special agent and his trained canine, "PacMan," walked along the rows of luggage and PacMan alerted at Harris' bag. Afterward, all of the bags were taken to baggage claims, and when Harris claimed his bags, agents made contact with him. During an ensuing interview, Harris consented to a search of his bags. Officers recovered approximately 40 pounds of marijuana from Harris' bag.

Harris was indicted and charged with trafficking marijuana and possession with intent to distribute marijuana on October 14, 2015. He filed a preliminary motion to suppress on December 4, 2015, and a particularized amended motion to suppress on December 10, 2015, which he later amended and filed on December 29, 2015. The motions were all filed under the 2015 indictment number.

On January 6, 2016, the State re-indicted the case, and on January 20, 2016, Harris filed a motion to suppress, again under the 2015 indictment number, in which he argued, among other things, that the drug dog was unreliable.[1] On February 2, 2016, Harris filed

---

[1] The record does not include any filings made under the previous indictment. Much of the procedural posture was detailed at the March 24, 2016 hearing on the State's motion to quash.

a witness subpoena seeking certain information about the canine and the handler.[2] On February 15, 2016, the State filed a motion to quash the subpoena on the grounds that it was unreasonable and oppressive, in violation of OCGA § 24-13-23, and that the material sought was not relevant, as defined in OCGA § 24-4-401.

On February 25, 2016, a hearing was held on the motion to quash, but it was continued to a later date to allow Harris to re-file his motion to suppress after the trial court noted that the only pending motion to suppress had been filed under the 2015 indictment number. The parties agreed that Harris would be permitted to file a motion to suppress identical in "form and substance" to the motion to suppress "inadvertently" filed under the 2015 indictment number. On February 26, 2016, Harris re-filed his motion to suppress under the 2016 indictment number. In addition to asserting the lack of probable cause for the seizure of his bags, lack of consent, and that the warrantless seizure of the

---

[2] The subpoena in its entirety requested:
1. All rules, regulations, policies, etc. in your possession, custody or control relating to the use of drug/narcotic/explosive detection canines; 2. All rules, regulations, policies, etc. in your possession, custody or control relating to the use of drug/narcotic/explosive detection canines and handlers; 3. All records and documents relating to drug/narcotic/explosive detection canine handler S/A Brian Hoopingarner; and 4. All records and documents relating to drug/narcotic/explosive detection canine "PacMan."

bag was an illegal search and seizure, Harris also maintained that "the particular dog used was unreliable."

On March 24, 2016, the trial court held a hearing on the State's motion to quash, at which the State argued, among other things, that per *Florida v. Harris*, 568 US 237 (133 SCt 1050, 185 LE2d 61) (2013) and other legal authority, documents related to the dog's training are not relevant if a dog is certified on the day in question, and that the subpoena was overly broad and burdensome.[3] The State had previously provided Harris with five documents – the handler's training completion certificate, PacMan's training completion certificate, a certificate from the National Narcotic Detector Dog Association ("NNDDA") certifying that PacMan and the handler had completed NNDDA certification, and the cover of the NNDDA certification book showing the certification numbers. It argued that this documentation met the *Florida v. Harris* criteria for establishing the dog's reliability, and that reliability "goes to the alert and whether that provides probable cause. . . . Reliability does not go to the training." The State further asserted that Harris challenged the dog's reliability, not its training, in his motion to

---

[3] At the hearing, Harris withdrew the first two requests listed in his subpoena, and the only remaining items sought under the subpoena were the records and documents relating to PacMan's handler, the handler, and the records and documents relating to PacMan.

suppress, that it had provided all relevant materials establishing reliability through the certification documents, and "[a]nything else isn't [relevant to whether the dog was] reliable."

Harris agreed with the State that under *Florida v. Harris* there is a presumption that "evidence of certification if *unchallenged* is enough." but that the case further establishes that the presumption is rebuttable. He asserted that he should be permitted to challenge the dog's reliability not only cross-examination, but also "based on the underlying records of the dog and the handler. That's the basis for the subpoena." Harris maintained that "as used in a context of a motion to suppress or a suppression hearing the subpoena would be used to challenge the reliability of the dog and the dog handler."

At the conclusion of the hearing, the trial court orally ruled as follows:

> After hearing the argument of the parties and examining the subpoena sought by [Harris], first of all, looking at the motion to suppress and what is sought in the motion to suppress, the Court grants the motion to quash by the State, finding that the items that are sought by the subpoena duces tecum are not relevant. Also, that the requests are over broad, they are unreasonably burdensome and oppressive."

Subsequently, the trial court entered a written order granting the State's motion to quash.

Following our review, we vacate the trial court's grant of the State's motion to quash and remand for further proceedings consistent with this opinion.

5

When a motion to quash a subpoena is filed, the party serving the subpoena has the initial burden of showing the documents sought are relevant. Where the evidence sought in a subpoena duces tecum is demonstrably relevant and material to the defense, it is error for a trial court to quash the subpoena.

(Citations and punctuation omitted.) *Gregg v. State*, 331 Ga. App. 833, 835 (771 SE2d 486) (2015) (physical precedent only).

The material requested in Harris' subpoena were "[a]ll records and documents relating to drug/narcotic/explosive detection canine handler . . . and . . . [a]ll records and documents relating to drug/narcotic/explosive detection canine "PacMan." He contends that the materials had demonstrative material relevance to an ultimate issue of his defense as presented in his motion to suppress, to wit: PacMan's reliability.[4] Harris further contends that per *Florida v. Harris*, he has a vested right to challenge the State's certification evidence of PacMan's's reliability because the reliability of the dog's alert is a "fact of consequence" to his motion to suppress and, moreover, that he is entitled to cross-examine the handler with the subpoenaed training documents that might either support or contradict the handler's opinion that PacMan's alert was reliable. Thus, he

_____

[4] OCGA § 24-4-401 ("'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

6

argues, because he has met the burden of establishing that the documents are relevant and material to his defense or fall within his broad right to a thorough and sifting cross-examination, the trial court erred in granting the motion to quash. See *Gregg*, 331 Ga. App. at 835.

According to the State, PacMan was certified through the NNDDA for the detection of marijuana and other narcotics and drugs, and because Pacman's certifications were current on the day of the incident, in accordance with *United States v. Villa,* 348 Fed. Appx. 376 (10th Cir. 2009) and *U. S. v. Gonzalez-Acosta*, 989 F.2d 384, 388-389 (1993), there was a presumption of reliability. Thus, the State argues, the documents in the subpoena, which were related to the dog's training, are not relevant to show that the dog was reliable.

In *Florida v. Harris*, the Supreme Court reversed the grant of a defendant's motion to suppress on the grounds that Florida's requirement that the State present an exhaustive set of records to establish a dog's reliability was "inconsistent with the flexible, common-sense standard of probable cause."133 SCt. at 1053. There, the defendant did not challenge the dog's training, arguing instead that the dog's certification had expired and that he had falsely alerted twice to defendant's truck even though no drugs were found therein. The Court explained that

7

evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (*subject to any conflicting evidence offered*) that the dog's alert provides probable cause to search. The same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs.

(Emphasis supplied.) *Florida v. Harris,* 133 SCt at 1057 (II). But, the Court also pointed out that

 [a] defendant must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses. The defendant, for example, may contest the adequacy of a certification or training program, perhaps asserting that its standards are too lax or its methods faulty. So too, the defendant may examine how the dog (or handler) performed in the assessments made in those settings.

Id.

In *McKinney v. State*, 326 Ga. App. 753 (755 SE2d 315) (2014), this Court relied upon the *Florida v. Harris* standard for reviewing probable cause based upon an alert. Quoting from that case, we held that

[t]he court should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And the court should then evaluate

the proffered evidence to decide what all the circumstances demonstrate. If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause. If, in contrast, the defendant has challenged the State's case (by disputing the reliability of the dog overall or of a particular alert), then the court should weigh the competing evidence.

Id. at 755 (1). And, in *Gregg*, which was decided after *McKinney*, this Court explained that a defendant who elects to have the reciprocal discovery statutes apply may nonetheless utilize subpoena power to obtain relevant documents. *Gregg*, 331 Ga. App. at 835. "Where the evidence sought in a subpoena *duces tecum* is demonstrably relevant and material to the defense, it is error for a trial court to quash the subpoena." Id.

In the present case, at the hearing on the motion to quash, the trial court orally found that the items sought in the subpoena were not relevant to "what is sought in the motion to suppress," and also that the requests are overly broad, unreasonably burdensome and oppressive. Although the subsequent written order did not provide a rationale for granting the motion to quash, the trial court apparently accepted the State's contention that the certification documents alone created an unrebuttable presumption of reliability, and that materials related to training were not relevant to demonstrate reliability.

9

While, as explained by this Court in *McGivney*, within the context of establishing probable cause, certification can be sufficient to show that the dog's alert is reliable, this presumption is established when the reliability is uncontested. *McGivney*, 326 Ga. App. at 755 (1). But if the defendant contests the reliability of the alert then "the court should weigh the competing evidence."Id. To do so, the defendant should be permitted to utilize subpoena power to obtain relevant materials. *Gregg*, 331 Ga. App. at 835. Thus, for the trial court to weigh competing evidence, the defendant must have access to it. The cases do not hold, as the State asserts, that Harris is precluded from challenging the reliability of the alert with materials related to training because reliability was presumptively established by demonstrating certification on the day of the alert.

Having determined that certification on the day of the alert does not preclude a challenge to the reliability, this Court cannot determine from the existing record whether the training materials were relevant to the issue of reliability. The subpoena requested all of the "records and documents relating to" the handler and PacMan. At the hearing on the motion to quash, the State simply argued that the materials were irrelevant because training materials were not related to reliability, and reliability was established per se by the certification. Other than the blanket assertion that training materials are irrelevant to demonstrate reliability based on its interpretation of *Harris* and its progeny, the State

10

offered no other basis for its objection. Moreover, even if the subpoena was overly broad, a trial court has discretion to modify it. See OCGA § 24-13-23; *Bazemore v. State*, 244 Ga. App. 460, 464 (2) (535 SE2d 830) (2000) (in response to a motion to quash, a trial court may modify a subpoena.)

Accordingly, because it is unclear whether Harris met his burden of establishing that the subpoenaed materials were relevant to challenge the reliability of the alert, and, if so, whether the State then met its burden of demonstrating that the subpoena was overly broad and unreasonably burdensome, we vacate the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion.

*Judgment vacated, and case remanded. McMillian and Mercier, JJ., concur.*