**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 21, 2020**

# In the Court of Appeals of Georgia

A20A1075. LAWRENCE v. THE STATE.

MILLER, Presiding Judge.

In 2013, a Liberty County jury found Adrian Lawrence guilty of six counts of sexual exploitation of children (OCGA § 16-12-100 (b)). Lawrence appeals from the verdicts, the sentence, and the trial court's denial of his motion for new trial, arguing that (1) the trial court erred in determining that he freely and voluntarily waived his rights before making statements to officers; (2) venue was inappropriate in Liberty County and thus there was insufficient evidence of venue to support the verdict; (3) his trial counsel rendered ineffective assistance by failing to object to a jury instruction that allegedly permitted the jury to find that he could be convicted for conduct that occurred in Chatham County; and (4) the trial court abused its discretion when it made no provisions to feed the jurors an evening meal or permitted them to

obtain dinner during deliberations. Having reviewed the record in this case and discerned no reversible error, we affirm.

Viewed in the light most favorable to the jury's verdicts,[1] the record shows that detective captain Charles Woodall specializes in computer related investigations and was assigned to the "internet crimes against children task force" with the Liberty County Sheriff's Department. In this role, Detective Woodall monitors various peer-to-peer file sharing networks that are used for the distribution of child pornography. In December 2009, while he was operating out of his Liberty County office, Detective Woodall observed a specific IP address that was offering for download various files containing child pornography and that the IP address was local to Liberty County and had been issued by a local internet service provider. Utilizing his undercover computer, Detective Woodall connected to the computer associated with the IP address and downloaded two files, which he determined were videos depicting child pornography. During his investigation, Detective Woodall downloaded files from this same IP address on seven occasions. Detective Woodall determined that the IP address was located at the Hunter Army Airfield in Fort Stewart, and he contacted the United States Army Criminal Investigation Command ("CID") at Fort Stewart. After

_____

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

receiving permission from the commander to search Lawrence's room, Detective Woodall seized Lawrence's computer. During a forensic examination, Detective Woodall determined that the files he had downloaded had been distributed through Lawrence's computer because they had "identical hash values" and were still stored on Lawrence's computer in the "share directory." Agent Jillian Rich with the CID interviewed Lawrence after he signed a waiver of rights, and Detective Woodall conducted a separate interview with Lawrence after he signed a *Miranda*[2] rights warning certificate.

Lawrence was indicted on six counts of sexual exploitation of children (OCGA § 16-12-100 (b)), with each count alleging that he knowingly distributed child pornography in Liberty County. The jury found Lawrence guilty of all counts of the indictment, and the trial court sentenced Lawrence to serve 10 years, with the first six years to be served in confinement and the remainder to be served on probation. Lawrence filed a motion for new trial. The trial court denied the motion after a hearing, and this appeal followed.

1. First, Lawrence argues that the trial court erred in determining that he knowingly, voluntarily, and intelligently waived his rights before making statements

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

3

to law enforcement. Specifically, he argues that (1) he was afraid that he would be reprimanded or lose rank if he did not answer Agent Rich's questions; (2) he had been awake since the early morning of the interview with her and underwent a lengthy interview with only one bathroom break and water break; and (3) he feared discharge, pay reduction, and discipline if he did not speak with Detective Woodall during the second interview. This enumeration of error fails because the trial court properly determined that Lawrence's statements were freely and voluntarily made.

> In reviewing a ruling on the admissibility of a defendant's statements where the facts are disputed, we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the law to the facts. A reviewing court may consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape. On the other hand, to the extent that legally significant facts were proved by evidence other than the video recording, the trial court as fact finder was entitled to determine the credibility and weight of that other evidence.

(Citation and punctuation omitted.) *State v. Richardson*, 353 Ga. App. 368, 368-369 (837 SE2d 524) (2020).

At the *Jackson-Denno*[3] hearing, the trial court heard testimony from Agent Rich, Detective Woodall, and Lawrence and entered extensive factual findings on the record before determining that Lawrence's statements were freely and voluntarily made. As to the interview with Agent Rich, which it classified as a detention, the trial court found that Lawrence reported to formation at approximately 5:20 a.m.; he arrived at the CID office at around noon; he had nothing to eat that morning; and he was told by a sergeant transporting him to the CID office to answer the interview questions as a PFC should. The trial court also found, however, that Lawrence had breaks during the day; that he had no medical conditions; he used the bathroom; he had something to drink; Agent Rich read the rights waiver to him aloud; there were no threats or promises during the interview process; and, although the interview room underwent a rise in temperature during the day, the heat was alleviated by the opening of the doors and the turning on of the air conditioner. Regarding the interview with Detective Woodall, the trial court found that Detective Woodall interviewed Lawrence in his office at the Liberty County Sheriff's Office; before the interview began Detective Woodall advised Lawrence that he had a warrant for his arrest but Lawrence was only arrested after the interview; Detective Woodall read Lawrence's

---

[3] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

rights to him aloud; Lawrence was not under duress and indicated that he understood his rights; Lawrence never asked for a break or an attorney; and Detective Woodall did not threaten Lawrence or make any promises to him.

Given the testimony at the hearing, the trial court's findings of fact were not clearly erroneous. Agent Rich testified that when Lawrence arrived at the CID building she discussed Lawrence's rights with him. Although she testified that the interview lasted seven hours, Agent Rich explained that Lawrence was allowed breaks, he was asked whether he needed anything to eat or drink, and she did not threaten him or make any promises. Additionally, Lawrence testified that Agent Rich did not threaten him or make any promises to him, and Detective Woodall, who was also present at the interview, testified that Lawrence was not threatened with loss of rank or pay. He added that while the room was not overly comfortable, they "were able to get up and cool it off[.]"

As to the interview with Detective Woodall, Detective Woodall testified that he obtained a warrant for Lawrence before the interview and told Lawrence that the warrant existed based on the interview with Agent Rich, but that he served it on Lawrence after the interview was completed. Detective Woodall testified that Lawrence was asked whether he wanted water or needed to use the bathroom, and

that during the 30-minute interview Lawrence was not threatened, and he did not indicate that he wanted an attorney or that he wanted to discontinue the interview. Moreover, as to both interviews, Lawrence admitted that Agent Rich and Detective Woodall reviewed his rights with him, that he indicated that he understood those rights, and that he was never denied a break. See *Hance v. State*, 245 Ga. 856, 858-859 (2) (268 SE2d 339) (1980) (defendant's statements to CID agents were freely and voluntarily made where the agents, acting through the defendant's commanding officer, requested that the defendant accompany them to CID headquarters for the purpose of being interviewed, the defendant was advised of his rights, the interview lasted more than nine hours, and no promises were made to the defendant during the interview); *Nguyen v. State*, 273 Ga. 389, 396 (2) (b) (543 SE2d 5) (2001) (statements were freely and voluntary given where there was no evidence that the detective threatened the defendant or offered him any reward to speak with him or that the defendant was denied use of the bathroom, food, or water, and the defendant did not request an attorney or ask the detective to stop interviewing him); *Dexter v. State*, 293 Ga. App. 388, 391 (2) (667 SE2d 172) (2008) ("Police can . . . encourage a defendant to tell the truth without rendering a confession involuntary."). Accordingly, the trial court properly admitted Lawrence's statements from both interviews.

7

2. Next, Lawrence argues that there was insufficient evidence to support venue in Liberty County because all of the actionable conduct in this case, i.e., the distribution of pornography, occurred on a military base in Chatham County, and thus venue was only appropriate in federal court. This argument fails because venue was proper in Liberty County and the State presented sufficient evidence of venue.

> Our Georgia Constitution requires that venue in all criminal cases must be laid in the county in which the crime was allegedly committed. Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt. The State may establish venue by whatever means of proof are available to it, and it may use both direct and circumstantial evidence. On appeal, we view the evidence in the light most favorable to the verdict and determine whether the evidence was sufficient to permit a finding that the crime was committed in the county where the defendant was indicted.

(Citation and omitted.) *Adams v. State*, 312 Ga. App. 570, 577-578 (3) (b) (718 SE2d 899) (2011). Under OCGA § 16-12-100 (b) (5), "[i]t is unlawful for any person knowingly to create, reproduce, publish, promote, sell, *distribute*, give, exhibit, or possess with intent to sell or distribute any visual medium which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." (Emphasis

8

supplied). In the absence of a specific venue provision, as is the case here, "venue is determined by Art. VI, Sec. II, Para. VI of the Georgia Constitution which provides: all criminal cases shall be tried in the county where the crime was committed." (Citation and punctuation omitted.) *State v. Kell*, 276 Ga. 423, 425 (577 SE2d 551) (2003). In analyzing OCGA § 16-12-100 (b) (5), we recently held that "where . . . an individual knowingly makes materials available for others to take and those materials are in fact taken, distribution has occurred." *Maddox v. State*, 346 Ga. App. 674, 681 (3) (a) (816 SE2d 796) (2018).

Under OCGA § 16-12-100 (b) (5), therefore, the crime of unlawful distribution of visual media was committed when Lawrence knowingly made the files available from Chatham County *and* when Detective Woodall downloaded the files. Because the files were downloaded in Liberty County, venue could have legally been laid in Liberty County. See, e.g., *Patel v. State*, 282 Ga. 412, 415-416 (3) (651 SE2d 55) (2007) (analyzing OCGA § 16.12.100.2 and determining that where the defendant was located in Cherokee County and used his computer to transmit messages containing sexually explicit photographs to a police officer located in Fayette County and solicit sexual acts from that officer, venue could legally have been laid in either Cherokee County or Fayette County); see also *State v. Kell*, 276 Ga. 423, 425 (577

9

SE2d 551) (2003) (where the defendant was charged with "obtaining" Medicaid payments to which he was not entitled by means of a "fraudulent scheme or device," venue was proper either in the county where the defendant hatched the scheme, performed overt acts in furtherance thereof, and received the payments, or the county where the fraudulent electronic transmissions were sent).

3. Lawrence claims that his trial counsel rendered ineffective assistance by failing to object to a jury instruction that defined "distribution" in a way that permitted the jury to find that he could be convicted based on conduct that occurred only in Chatham County, specifically, his possessing the material at issue with the intent to distribute it by making it available via file sharing. This claim is not meritorious.

"To prevail on a claim of ineffective assistance of trial counsel, a defendant bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency." (Citation omitted.) *Thomas v. State*, 288 Ga. App. 827 (655 SE2d 701) (2007). "Prejudice is shown by demonstrating that a reasonable probability exists that the outcome of the case would have been different but for the deficient performance of counsel." (Citation and punctuation omitted.) Id.

Here, the trial court instructed the jury as follows:

It is unlawful for any person to knowingly distribute, give, or possess with intent to sell or distribute any visual medium which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct. . . . Distribution means any act, including possession with intent to distribute, production, transmission, advertisement, and transportation related to the . . . transfer of material involving the sexual exploitation of a minor. Lawrence's complaint is that because the trial court included "possession with intent to distribute" in the definition of "distribution," the jury could have convicted him based on conduct that occurred solely in Chatham County, i.e., his possession and posting of pornographic material while he was located on the military base in Fort Stewart. Even assuming, however, that trial counsel was deficient by failing to object to this portion of the charge, the trial court explicitly instructed the jury that they would be authorized to return a guilty verdict if they found that Lawrence committed all of the charged offenses "in Liberty County, Georgia," as set forth in the indictment, and that the State was required to prove beyond a reasonable doubt that venue was in Liberty County. Therefore, Lawrence cannot demonstrate that he was prejudiced by trial counsel's failure to object to the jury instructions and this enumeration presents no basis for reversal. See *Slaughter v. State*, 345 Ga. App. 790, 792 (2) (815 SE2d 141) (2018) ("Because the charge required the jury to find beyond a reasonable doubt that venue was in Fulton County, which the jury could do based on the evidence presented at trial, the extraneous instruction did not likely affect the outcome of the proceedings.").

4. Last, Lawrence contends that the trial court abused its discretion when it made no provisions to feed the jurors an evening meal during deliberations and that it did not allow them to obtain dinner, rendering them without a meal break for almost nine hours and thus coercing them to arrive at a "fast verdict."

As Lawrence acknowledges, a trial court is empowered "[t]o control, in the furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto[.]" OCGA § 15-1-3 (4). Further, we have held that "the trial court has a broad discretion in regulating and controlling the business of the court, and the appellate court should never interfere with its exercise unless it is made to appear that wrong or oppression results from its abuse, or the court in some manner takes away rights the parties have under the law." (Citation and punctuation omitted.) *McKinney v. State*, 326 Ga. App. 753, 757 (2) (755 SE2d 315) (2014). We recognize that the trial proceeded until the night, the jury began their deliberations at around 9:23 p.m., and the jury reached a verdict shortly afterward. Simultaneously, however, the record shows that the jurors were afforded a lunch break and multiple breaks thereafter, and no juror complained of being hungry or too tired to proceed with deliberations or feeling rushed to render a verdict. Accordingly, the record does not demonstrate that the trial court abused its

discretion in regulating and controlling the business of the court so as to coerce the jury into rendering a hasty verdict.

Because Lawrence has failed to demonstrate any reversible error, we affirm the verdicts, the sentence, and the trial court's denial of his motion for new trial.

*Judgment affirmed. Mercier and Coomer, JJ., concur.*